## HIGHWAY CONSTRUCTION CO. v. SHUE, Adm'x.

No. 25853.  Sept. 17, 1935.

Hudson & Hudson and T. A. Aggas, for plaintiff in error.

C. E. Baldwin and Bailey E. Bell, for defendant in error.

PHELPS, J. William Shue was accidentally killed while 'working for the Highway Construction Company. His widow, administratrix of his estate, recovered a verdict and judgment of $7,500 against the construction company on the theory that his death was caused by its negligence in failing to maintain its roadway in a safe condition.

The defendant contends that the evidence was insufficient to sustain the verdict, which was based wholly on conjecture, speculation, or surmise. It is therefore necessary to review the evidence:

The defendant was constructing a highway between Blanchard and Tabler, Okla. It employed between 30 and 40 truck drivers to haul material from Blanchard to the mixer, which at the time of this accident was about six miles west of Blanchard. They were laying the cement slab over the prepared roadbed. the work progressing toward Blanchard. Thus the material was hauled over the portion of the road which had not yet been paved. The road was closed to the public and under the exclusive control of the defendant.

Shue was one of the truck drivers. The truck belonged to one Moore, from whom he rented it. Moore paid the upkeep cost, Shue furnished the oil and gas and repairing, and the defendant paid him so much per mile per load. However, the defense of independent contractor has not been seriously urged and is not here considered. Formerly the truck had been in defective condition, but there was uncontradicted evidence that it had since been repaired.

In hauling the material between Blanchard and the mixer, over the unpaved road, it was necessary for the drivers to travel over a "fill" which the defendant had heightened, between two hills. The fill had been constructed by piling up dirt and settling it, preparatory to paving, by what is known as ponding and jetting. By such process water is forced into the earth material by the use of pipes driven therein. and is made to soak into it by diking small ponds of water on the top of the fill. This solidifies the foundation more quickly than if the dirt were allowed to settle of its own weight. When this accident occurred the subsoil was still damp and spongy, but the top was dry and so dusty that, as one witness put it, "you could hardly see the road."

The fill was about 300 feet long and 12 feet high, the sides sloping steeply downward, and at the bottom there was a pond of water. A guard rail had formerly existed along the old road on this side, which was lower than the present road, but it had been removed by the defendant and the post and wire, or cable, were still lying along the side of the fill.

Shue had delivered a load to the mixer and was hurrying back, empty, to Blanchard for another load. He was hurrying because the mixer was automatically timed to receive successive loads every minute and a half, the trucks employed this day were fewer than usually employed, and the foremen were rushing and speeding up the drivers. A truck driver, in crossing the fill, discovered Shue's truck overturned in the pond below, with Shue's head pinned under the truck, in the water. His legs were moving. Workmen who quickly congregated could not remove the truck by hand and so they lifted it by tying the old guard line to it and pulling with another truck. By that time Shue was dead, apparently from drowning.

Due to the spongy nature of the subsoil, the freshness of the structure, and the exceedingly heavy truckloads of material constantly being hurried across it the top of the fill was full of chug holes. Every few days a scraper was drawn over it. but it was said that this only filled the chug holes with loose dirt and they would instantly reappear. On the day of the accident the north half of the fill was impassable and the south half was full of chug holes. Witnesses testified that at the place where the accident occurred the driver had to go "dangerously near" the outer edge of the fill, with but a foot or two to spare before going over the edge. Though no one saw the accident, many wit-

nesses testified that the tracks were plainly visible, and that although they could not be traced to any particular chug hole, they did proceed from an unusually rough place in the road some ten feet or more from where they went over the edge. The two right wheels apparently moved along in the loose dirt outside of the ruts and then gradually down the side of the fill for a distance estimated from 20 feet to 40 feet, after which there were no more tracks, at which place the truck turned over and rolled into the water. There was testimony that often when a truck would hit one of these chug holes it would deflect the front wheels first one way and then the other way, causing temporary loss of control, and that once a wheel got in the loose dirt it was difficult to steer it back onto solid ground.

The defendant does not seriously urge that the evidence was insufficient to sustain a finding of negligence based on the condition of the roadway. The defendant does contend that the plaintiff failed to show a causal connection between the negligence and the injury,—that is, that the rough road caused the death. Defendant argues that it can just as reasonably be said that the truck left the road because Shue was driving at an excessive speed or was not paying attention to the road, or was searching his clothes for a match, lighting a cigarette, waving to a friend, unlacing his shoe, or had fallen asleep or was suddenly seized with illness,—and that Hepner v. Quapaw Gas Co., 92 Okla. 9, 217 P. 438, is applicable, to the effect that:

"A verdict must be said to be based on speculation and conjecture when, after considering all the evidence favorable to plaintiff, together with all inferences to be reasonably drawn therefrom, and excluding all evidence favorable to defendant, all unprejudiced minds must agree from the facts and circumstances in evidence, that any one of several conclusions consistent with nonliability of defendant may as reasonably be drawn therefrom as is the conclusion of liability under plaintiff's theory of the case."

A close analysis of the foregoing definition reveals that an important line of demarcation exists between that case and the group of cases exemplified by Weleetka Cotton Oil Co. v. Brookshire, 65 Okla. 293, 166 P. 408, wherein the principle is announced that in a civil case, all that the plaintiff is required to do, in order to establish his case, is to make it appear more probable that the injury came in whole or in part from the defendant's negligence than from any other cause, and this fact may be established by circumstantial evidence.

The two rules are consistent. Considering them together, we have this: If any one of several other conclusions is as consistent with the facts as is the conclusion that the negligence caused the injury, then the verdict may be said to be based upon conjecture. But if those other conclusions (i. e., that the negligence did not cause the injury, but that something else did) are not as consistent with the facts as is the conclusion that the negligence caused the injury, it cannot then be said that the verdict is based upon conjecture. It is a matter of equality or inequality of probabilities, and we mean real, logical probabilities, based upon established facts, as opposed to speculation and guesswork. We must exclude all those tempting so-called probabilities which are the result of heaping inference upon inference. While one reasonable inference resulting from a proven fact or facts may be treated as evidence in itself, it cannot be utilized as a basic proven fact for the generation of further, additional inferences. Good reason lies behind that rule, for the purpose of all evidence is to discover the truth; facts do discover it, while a maze of dependent inferences only conceal it.

An illustration is Prest-O-Lite Co. v. Howery, 169 Okla. 408, 37 P. (2d) 303, cited by defendant. The Prest-O-Lite Company discharged substances into the stream above plaintiff's premises. Plaintiff's chickens drank the water and died. That was virtually the extent of plaintiff's proof. This court reversed a verdict in his favor, for there was no proof either that the water was poisonous or that, if so, it was the cause of the destruction. Plaintiff's whole case was built on interdependent inferences, in this manner: (a) The chickens drank the water and died, therefore it was poisonous. (b) The water was poisonous, therefore it was the drinking of the water which killed them, and not some other cause.

A somewhat stronger case cited by defendant is Schaff, Rec. of M., K. & T. Ry. Co. v. Ferry, 105 Okla. 259, 232 P. 407. Deceased was foreman of a switching crew. His body was found on the track, behind a box car with a defective brake, which car had bumped into another car standing still. His lantern was found caught on top of the car and blood was on the car wheel. This court reversed a judgment in favor of his administratrix, pointing out that while the inferences were permissible that he had been on

top of the car, and that the car had run over him, the inference was not permissible that the defective brake was the cause of the fall. Observe that each of the permissible inferences was based upon a directly connected fact, while the unpermissible inference was based upon no fact in evidence but upon an inference itself: To place him on top of the car was an inference from the fact that his lantern was found there; but the inference that he was also handling the brake depends on the preceding inference that he was on top of the car, and therefore is an inference on an inference. Had there been the least **fact** in evidence, upon which to base the inference that he was handling the brake. the proof of causal connection between the negligence and the injury would have been sufficient to sustain the verdict. It is interesting to compare that case with St. L. & S. F. Ry. Co. v. Starkweather, 148 Okla. 94, 297 P. 815, arriving at an opposite result on account of this identical point. A brakeman on a moving train was seen to have entered a slanting floored gondola car. After the train had passed, his body was found on the track, a short distance ahead of where he was last seen. Blood was found on the car wheels and on the car's trap doors, which were found open after the accident. It was proved if they had been properly fastened they could not have opened. There the opened doors, the blood thereon, and the impression in the dust as if something had slid through the opening, although circumstantial, were sufficient facts upon which to base the inference that the faulty condition of the doors was the cause of the death,— a set of known facts in connection with the doors. the like of which was totally missing as in connection with the brake in the other case.

Where the causal connection is sought to be established by circumstantial evidence. there appear to be two all-important questions: (1) Does the inference of causal connection spring reasonably and directly from the facts in evidence, as distinguished from arising out of another inference interspersed between it and the facts? and (2) Is there evidence to sustain the conclusion of greater probability that the injury came in whole or in part from the defendant's negligence than from any other cause? Barring other factors not presently considered, if those questions are answered in the affirmative, the causal connection is considered established, otherwise not.

This court. in St. L. & S. F. Ry. Co. v.

Darnell, 42 Okla. 394, 141 P. 786, wherein the facts evidencing causal connection were no stronger than in the instant case, affirmed a judgment for plaintiff. A brakeman was seen at night on top of the train, moving forward. As the train passed over a rough portion of the roadbed his lantern was seen to fall. Later his body was found on the track near the rough place. The court stated:

"* * * There is evidence tending to show that defendant's negligence was the underlying cause of the injury; that is to say, that there is evidence which, taken with the rational inferences to be drawn from it, tends to show that but for the condition in which defendant had permitted its track to get that plaintiff would not have fallen from the train and thus lost his life. If there was such evidence before the jury, then its weight and effect was to be determined by them. The question of proximate cause is usually to be determined by the jury. * * * It seems to us that the facts and circumstances shown tend to convince the mind, and this is the office and purpose of proof, that the great probabilities are that the brakeman lost his balance, his footing, or made the false movement which caused the fall, because of the unusual and unnecessary movement of the train at the time. If so, this unusual and unnecessary movement was caused by the condition of the track. The condition of the track was negligence. * * * It is argued that to reach this conclusion we must build inference upon inference, and that in the end it is mere speculation. We do not think so. We think the evidence shows a negligent condition in the track; that the train in going over this place rocked * * * because of the negligent condition in the track. These being proven facts, it is only necessary to draw inferences or conclusions from them as to what caused the fall. * * *"

Let us now apply the two test questions, named above, to the instant case. Unless we split hairs, we fail to discover where it is necessary here to predicate an inference upon another inference. The tracks were definitely identified because they were easily traceable from the loose dirt sliding directly backward into the unusually rough place, perilously near the edge of the fill, where deceased was required to drive by reason of the impassability of the remainder of the road. Those tracks carry with them a record of the event. probably more dependable than the uncertain testimony of witnesses. Our reasoning is not that the tracks are merely evidence that he ran off the road, and that, then, he ran off the road because it was rough. There is direct evidence that he was on the road, and that he was found overturned in the pond

below, therefore there is a reasonable inference, without the aid of the tracks, that he ran off the road. We look upon the tracks, and especially to the fact that they led directly from the rough place, as a basic fact warranting the reasonable inference that the holes or rough places from which they led deflected the wheels of the truck over the side. In a manner, the tracks are a **picture** of the deflection. There is certainly no intervening inference. They take the place of the blood on the trap doors in the gondola car case, discussed above, and the impression in the dust where the brakeman's body had gone through the doors, and they take the place of the lantern's falling as the train passed over the rough portion of the roadbed in St. L. & S. F. Ry. Co. v. Darnell, supra. The tracks do not serve as a fact basis for the inference that Shue did go over the brink so much as they indicate, and directly too, **why** he went over the brink,—especially when considered in connection with the testimony that the holes frequently caused temporary loss of control, further to be aggravated upon the wheels reaching the soft loose dirt. Add to this the shortage of trucks and the speed with which the defendant required its drivers to travel on the day in question. Can it be said the conclusion that the defective roadway caused, in whole or in part, the truck to leave the embankment finds no support in the evidence, and that such conclusion is purely guesswork and conjecture? If so, then St. L. & S. F. Ry. Co. v. Darnell, discussed above, should have long ago been overruled, yet it has been followed by this court many times since its rendition in 1914.

As to part two of the test, all of the evidence that we have points to a "greater probability" that the injury came from the defective roadway than from any other cause, for there is no evidence at all that it came from any other cause. It is true that certain witnesses testified that formerly the truck had been in bad condition, but the undisputed testimony of others was that since that time it had been completely repaired. That was a matter for the jury.

The significance of the failure to re-erect the guard rail as a safety measure along this perilous strip of road has not been seriously debated by the parties An experienced engineer testified he had never seen it done to a road or fill under construction; yet that fact would not be binding on the jury if it believed, under all the facts and circumstances of the particular case, that ordinary care demanded its re-erection, to the end that the workmen be provided a reasonably safe

place upon which to work. It was admitted by the defendant that a proper guard rail would have prevented the accident. The jury was authorized to consider this phase of the case in determining whether the defendant was negligent, and whether the absence of the guard rail contributed to the injury.

In the light of the former decisions of this court, and of the law as we find it generally announced in other jurisdictions, this judgment should be, and is hereby, affirmed.

McNEILL, C. J., and RILEY, BUSBY, and GIBSON, JJ., concur.