POWELL et al. v. DURANT MILLING CO.

No. 29846. June 10, 1941.

Rehearing Denied Feb. 23, 1943. Application for Leave to File Second Petition for Rehearing Denied May 11, 1943.

*136 P. 2d 904.*

D. S. MacDonald, Jr., of Durant, for plaintiff in error.

C. C. Hatchett and Utterback & Utterback, all of Durant, for defendant in error.

GIBSON, J. This action was instituted in district court by plaintiff in error on behalf of herself and her minor children to recover damages for the alleged wrongful death of her husband. At the close of all the evidence the court instructed a verdict for defendant, and plaintiff appeals.

The issue of actionable negligence was the alleged failure of defendant to furnish and maintain for the deceased a safe place in which to work. The allegations in this connection were in substance that the deceased had been employed in defendant's mill and grain elevator under conditions dangerous and detrimental to his health and life, in that the atmosphere in the building was allowed to become and remain laden with dust, chaff, and particles arising from the process of milling grain, hay, and peanuts; that the defendant knew, or should have known, the possible deleterious effect of such dust and chaff upon the human system, but negligently and in disregard of its duty to deceased permitted the condition to continue in violation of its duty to remove the dust and chaff by means of proper ventilation, exhaust fans or devices, or to furnish deceased with a proper dust mask or other protective device; that as a result of such negligence deceased's lungs became congested with the dust and chaff aforesaid, resulting in infection and death.

The evidence shows that the atmosphere in the place where deceased worked was constantly filled with dust and chaff as a result of the milling process; the defendant did not instruct the workmen to use dust masks. There is medical testimony that decedent died as a result of breathing the dust and chaff. Defendant did not warn the workmen of dangers incident to the dust and chaff. There is some testimony concerning the nature of the ventilation of the building. There is testimony that one of a number of dust masks was not in good repair.

There is no evidence that the mill was operated imprudently or in any manner different from the way in which such mills are ordinarily operated; there is no evidence that the alleged dangers were latent, or that the deceased was not aware of the general conditions surrounding his employment. There is no evidence that the ventilation was below the ordinary standard in such case. There were dust masks for the use of the workmen. Plaintiff's evidence proves this fact. There is no evidence to indicate that more than one mask was unsuitable.

The question here is whether under this state of facts the trial court was justified in saying as a matter of law that the defendant had violated no legal duty toward its servant, the deceased.

Plaintiff says that to take this case from the jury would be to hold that the operator of a mill and elevator may place a servant in the most particle-filled atmosphere within his power to create and escape liability for injuries resulting from inhaling the particles. She asserts in this connection that the question whether the mill was operated in a dangerous manner with respect to the dust and chaff was a question for the jury. Counsel cite Joy v. Pope, 175 Okla. 540, 53 P. 2d 683, wherein it was held that whether a cotton compress as operated is a dangerous instrumentality was a question for the jury.

We may agree that such questions are ordinarily for the jury's determination. But it is not within the province of the jury in every case to say whether the particular conditions and circumstances surrounding the employment and from

which the servant received his injury indicated that the servant was given an unsafe place in which to work or was required to adopt an unsafe method of operation. Whether a place or a method may be considered unsafe and, if unsafe, whether the master has supplied the servant with proper safeguards, is ordinarily a matter to be determined by way of comparing the same with places, methods, and safeguards put to similar uses and commonly looked upon as safe or unsafe in the light of custom or of legal standards. As said in Beasley v. Bond, 173 Okla. 355, 48 P. 2d 299:

"It is difficult for the mind to determine whether any particular method is a safe method without a mental comparison of what was done with that which should or should not have been done. The two may coincide, and then again they may not. Comparison in such instances is necessary."

We realize, however, that where the standard of duty is not fixed by law or usage, but is variable, and shifts with the circumstances of the case, such standard is incapable of being determined as a matter of law, and where there is sufficient evidence, the jury must fix the standard and determine whether it has been complied with. Interstate Compress Co. v. Arthur, 53 Okla. 212, 155 P. 861. But where there is a fixed standard of duty, there must be evidence that the defendant failed to live up to that standard, and that such failure was the proximate cause of the injury. Stephan v. Apartment Hotels, Inc., 182 Okla. 274, 77 P. 2d 539. In that case the rule was stated as follows:

"In a personal injury action by an employee against his employer, where plaintiff's evidence shows that the standard of duty of such employer toward plaintiff with reference to safe place to work, safe tools, and safe appliances is fixed by law, custom, or usage, and that such duty has been performed, sustaining demurrer to such evidence does not constitute error."

In the instant case the defendant brought forth proof that its mill was operated in every way, including ventilation and supplying of dust masks, according to long established custom and usage. This evidence remained uncontradicted. Plaintiff's evidence gives some information concerning the character of the ventilation, but we find nothing in the record to indicate that it did not conform to the standard fixed by custom and usage adopted in the milling industry. It is not within the province of juries to fix a standard of duty in such case where a standard of duty already exists.

Plaintiff cites numerous cases bearing on the general rules to be applied in cases of this character, but places considerable reliance on Beasley v. Bond, supra, as supporting authority for her argument on the particular question now under consideration. That and other cases are adequately distinguished in Stephan v. Apartment Hotels, Inc., supra. The language of the court in that case is applied here.

We are aware of the statement in the Beasley Case that "a master is not necessarily absolved from negligence liability by showing that he used the method customarily used by others performing similar tasks. The fact that others engaged in the same work used the same method is only some evidence of the safeness of that method." The rule based on this language is stated in the syllabus of that case as follows:

"On the issue of whether master has failed to provide a safe and proper method of accomplishing the work in which injured employee was engaged, evidence of other and better methods is admissible even though master has shown he used the method customarily adopted by others in same business."

The real meaning of the foregoing language is that if there is evidence that a given custom has been modified or overturned, the custom may no longer be the only criterion for determining the extent of the master's legal duties toward the servant, but is only some evidence of those duties.

Plaintiff failed to show that the defendant operated its mill in any manner

below the standard fixed by custom, and failed to show that such custom was no longer recognized as the best method of operation. It was necessary to show one or the other of these circumstances in order to make out a case of primary negligence for the jury.

The judgment is affirmed.

WELCH, C.J., CORN, V.C.J., and BAYLESS and DAVISON, JJ., concur. RILEY, OSBORN, HURST, and ARNOLD, JJ., dissent.

---

ARNOLD, J. (dissenting). This action was instituted in the district court of Bryan county by plaintiff, on behalf of herself and minor children, to recover damages for the alleged wrongful death of her husband. At the close of all the evidence the court instructed a verdict for the defendant, and plaintiff appealed.

The plaintiff alleged failure of the defendant to furnish and maintain for the deceased a safe place in which to work; inadequate machinery and exhaust devices; failure to furnish proper dust masks; that it "failed and refused to reasonably purify said atmosphere by recognized ventilation, exhaust, or suction fans, or devices, or to provide said deceased with a practicable dust mask"; that "said mill and elevator was negligently and carelessly constructed and maintained in that proper ventilation was not furnished."

Plaintiff further alleged that the atmosphere in the building was allowed to become laden with dust, chaff and particles arising from the process of milling grain, hay and peanuts; that defendant knew, or should have known, the deleterious effect of such dust and chaff upon the human system, but negligently and in disregard of its duty in this respect permitted the conditions to continue; that as a result of such negligence deceased's lungs became congested with the dust and chaff, resulting in an infection and eventually death.

Under the foregoing general allegations of negligence the court admitted testimony in support thereof without objection on the part of the defendant as to the location and general construction of the building in which deceased worked; the character and location of the machinery therein and the purposes for which used; the length of time the deceased had been employed by the defendant and the duties which he performed in conjunction with other employees and their activities.

The plaintiff's evidence discloses that around the feed mixer and pulverizer where the deceased worked the air was heavily laden with dust, chaff and particles arising from the milling process; that there was a suction or exhaust fan near the pulverizer; that the vibration of the pulverizer would stop the operation of the suction fan; that for this reason the suction fan was never used; that a few dust masks were furnished; that some of them were old and not in good repair; that most of the employees used a damp rag or a sack; that the west end of the room in which the deceased worked was entirely open, however, it was stacked full of bags of feed and bales of hay a large part of the time; that when the wind was in the northwest the dust remained around the men; that probably a particle of hay, straw or chaff had gotten in the lungs of the deceased causing an infection which probably caused his death.

In its answer the defendant denied negligence and specifically alleged "that the mill in which he worked was built and operated in an approved, mechanical manner; that all necessary appliances were furnished by the defendant to said deceased as well as other employees for the ventilation of the premises;" that all the risks that the deceased was subjected to were ordinary and inherent and, therefore, assumed; that it furnished adequate and practical dust masks and by its rules required their use; that if the deceased were injured by failure to use a dust mask, it was his own fault and negligence that caused his injury or death.

The evidence in support of the de-

fendant's answer was in the main in direct conflict with the above allegations and testimony of the plaintiff as to the operation of the mill and the use of the various protective devices.

The evidence is conclusive that the mill was modern and conformed to the standards fixed by custom and usage in the milling industry in the area where located; there is no evidence that the standard was variable or that there was a better or safer method; there is no evidence that the system of ventilation was below usual and customary standards. There is evidence, however, tending to show negligence in connection with the failure to operate the suction or exhaust fan and failure to furnish dust masks in reasonably good repair. This evidence was sufficient to require the submission of the question of negligence to the jury. See Herrian v. Union Equity Co-Op. Exchange, 172 Okla. 393, 45 P. 2d 151; Highway Construction Co. v. Shue, 173 Okla. 456, 49 P. 2d 203; Beasley v. Bond, 173 Okla. 355, 48 P. 2d 299, and other cases.

Proof that an industry is supplied with the usual and customary machinery and is operated in the customary and usual manner and in accordance with the standards usually observed by good operators in the industry is not an absolute defense, but competent for the consideration of the jury in determining if that degree of care was exercised commensurate with the risks of the operation. This is true for the reasons that there may be better and more cautious methods that the operators should know of and observe; that the circumstances and general surroundings may, and very likely do, vary as between any two industrial establishments; that low and inefficient standards, at variance with practice in other communities, may be set up and negligent operators escape responsibility for their negligence; that operators of the community might fail to keep pace with improved and better methods maintaining elsewhere.

The exercise of ordinary care, under all existing circumstances, is the test by which it should be determined whether one has been negligent. To recognize custom and usage in the general operation of an industry as an absolute defense would permit operators to set up their own standards and substitute same for the standard of ordinary care; what is ordinary care should be left to the jury for its determination under the existing circumstances.

It is generally conceded and recognized that good operators exercise reasonable and ordinary care and caution as to types of machinery used and as to the general methods of operation employed and, therefore, proof of custom and practice among good operators in the area, and that the defendant conformed to such general practice, is competent evidence of the exercise of ordinary care on the part of the defendant; such evidence would also be competent for the purpose of showing that a safe place in which to work was furnished by the company. Such evidence does not conclusively show, however, that the defendant exercised that degree of care necessary under all the existing circumstances. If ordinary care, as distinguished from just usual or customary care, is not the test as to the general operation of an industry, then juries and courts would be bound by predetermined standards of care by the operators of such industries. In other words, those charged with negligent conduct would necessarily be judged as to their own negligence by standards fixed by them.

In Beasley v. Bond, supra, we said:

"Master, failing to use reasonable care in providing safe tools, machinery, and appliances with which to work, is liable to employee injured by such negligence. . . .

"The focal point of inquiry for the purpose of which all such evidence of methods is admitted is that of whether the particular method employed was reasonably safe under the circumstances of the particular case. Our judgment is that a master is not necessarily absolved from negligent liability by showing that he used the method customarily

used by others performing similar tasks. The fact that others engaged in the same work used the same method is only some evidence of the safeness of that method. The reasonable safety of the method is the real matter of inquiry, and that others used the same method helps to solve but it is not conclusive of the question. It seems to us that evidence of the master's conducting his business in the manner customarily followed by experienced men in the same line of business is conclusive against negligence only if the jury believes that those other men have acted with the required degree of prudence and care in adopting such method."

The defendant relies particularly on Stephan v. Apartment Hotels, Inc., 182 Okla. 274, 77 P. 2d 539, 541. In that case we said:

"There is no evidence that the shaft door was out of repair; no evidence that the plaintiff was unskilled in the operation thereof; and no evidence that the same presented a dangerous or unsafe situation beyond the contemplation of the plaintiff. The elevator was an ordinary device easily and conveniently operated by one person, was in perfect repair, of common use, and suitable to the purposes for which it was employed. . . .

"We therefore hold that in an action of this character, where plaintiff's evidence shows that the standard of duty of an employer toward his employee with reference to safe place to work, safe tools, and appliances is fixed by law, custom, or usage, and *that such duty has been performed,* the evidence is insufficient to support a finding of negligence, and demurrer to the evidence should be sustained.

"The decisions of this court cited by plaintiff show that the duties of the employer in each case were variable and not fixed by custom or usage, or, *if so fixed, the evidence* of *performance* of *the duties so created was conflicting.* Chicago, R. I. & P. Ry. Co., v. Ashlock, 36 Okla. 706, 129 P. 726; Sulzberger & Sons Co. v. Hoover, 46 Okla. 792, 149 P. 887; Chicago, R. I. & P. Ry. Co., v. Rogers, 60 Okla. 249, 159 P. 1132; Cosden Pipe Line Co. v. Berry, 87 Okla. 237, 210 P. 141; Beasley v. Bond, 173 Okla. 355, 48 P. 2d 299; Highway Construction Co. v. Shue, 173 Okla. 456, 49 P. 2d 203; Wright v. Clark, 177 Okla. 628, 61 P. 2d 192. They are not in point."

That case does not sustain the contention of the defendant herein. A careful study thereof discloses that the views herein expressed are, in effect, in conformity therewith. The evidence in this case is conflicting as to the performance of the duty created by custom and usage.

Under the authority, supra, the defendant contends that herein, as therein, there is no variable standard of duty, custom, or usage. Customary usage of a certain kind of machinery for a certain purpose is conclusive as to the negligence of the operator in regard to the selection and devotion of such machinery for such a purpose; the selection, installation, and proper use of a piece of machinery customarily used for such certain purpose is not negligence, but an industry constitutes a combination of machinery operation, location and design of the building, actual operating methods, etc. Thus it is obvious that in the operation of a business industry standards must necessarily be variable and all existing circumstances and conditions enter into the question of whether the operator furnished a safe place to work. There is no variable standard as to the use and purpose of a *certain kind* or *piece* of machinery standing alone. A variable standard necessarily comes into the picture when you use a piece of machinery in conjunction with other machinery and conditions that give rise to consideration of other things.

Other such cases relied upon are: St. Louis & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 P. 1083; Willaman v. City of Fairview, 157 Okla. 239, 11 P. 2d 453; Warden-Pullen Coal Co. v. Wallace, 176 Okla. 604, 56 P. 2d 802; Grammer v. Mid-Continent Pet. Corp. (C. C. A. 10th Cir.) 71 Fed. 2d 38, writ of certiorari denied 293 U. S. 571, 79 L. Ed. 670. It will be noted that as to the question of negligence in those cases there were specific acts of negligence alleged; however, the evidence disclosed

no acts of negligence and they are not in point.

In Hale-Halsell Co. et al. v. Webb et al., 184 Okla. 589, 89 P. 2d 273, 274, we said:

"In ruling on the demurrer to the evidence and the motion for a directed verdict it was the duty of the court to say whether any facts were established by the evidence from which negligence could be reasonably inferred; but it was for the jury to say whether negligence ought to be inferred from the facts. City of Tulsa v. Harman (1931) 148 Okla. 117, 299 P. 462. It is only when the evidence with all the inferences the jury could reasonably draw therefrom are insufficient to support a verdict for plaintiff that the court may direct a verdict for defendant. Kramer v. Nichols-Chandler Home Building & Brokerage Co. (1923) 93 Okla. 227, 220 P. 338; Oklahoma City-Ada-Atoka R. Co. v. Riddle, 1938, 183 Okla. 318, 82 P. 2d 304."

See, also, Deep Rock Oil Corporation et al. v. Fox, 178 Okla. 516, 63 P. 2d 24, and the other cases to the same effect.

I am, therefore, of the opinion that the evidence in this case, together with all inferences that could have been reasonably drawn therefrom, was sufficient to sustain a verdict for the plaintiff and that the court committed error in directing a verdict for the defendant.