ESSARY, Ex'x, v. LOWDEN et al.

No. 29922.   June 10, 1941.

Rehearing Denied Sept. 9, 1941.

*116 P. 2d 712.*

Fred E. Suits, of Oklahoma City, and Clarence C. Chilcott, of Kansas City, Mo., for plaintiff in error.

W. R. Bleakmore, W. L. Farmer, John Barry, Robert E. Lee, and Cruce, Satterfield & Grigsby, all of Oklahoma City, for defendants in error.

HURST, J. Plaintiff, Sallie Essary, executrix of the last will and testament of William H. Essary, deceased, brought this action against defendants to recover damages for his wrongful death. From a verdict and judgment for defendants, plaintiff appeals.

Plaintiff's decedent was a brakeman on the switching crew of the Chicago, Rock Island & Pacific Railway, at Clinton, where that company and the St. Louis-San Francisco Railway Company maintain joint switching facilities. The accident occurred about 4 o'clock in the afternoon, on the main track of the Frisco, which ran from northwest to

southeast, sloping down grade to the northwest. From this main track a spur track serving a cotton compress branched off to the west. There were four empty cars standing on the spur track. The switch engine and ten loaded cars, manned by the engineer, fireman, engine foreman, whose name was Morgan, and Essary, backed upon the spur track and hooked on to the four empties. The purpose of the operation was to transfer these empties to the main Frisco track, in order to deliver some of the loaded cars to the compress. After hooking up the empties, the train ran out on the main track, going south past a switch at the junction of the spur with the main track. Morgan and Essary dropped off at the switch, and Morgan threw the switch. At this time the last car was some 15 feet south of the switch. Morgan told Essary he was going to cut the four empties off to him down the main line, and asked Essary if he could take care of them, and Essary said yes, to let them come. Morgan then walked south some three car lengths, and signaled the engineer to back up. Essary climbed to the top of the last empty car. It was raining hard, and he was wearing rubber or gum boots and a raincoat. When the end of the fourth empty car reached Morgan, he signaled the engineer to stop and attempted to throw the coupler between it and the last loaded car by pushing down with his hand on a lever which projected from between the cars. After making one or two unsuccessful attempts to work the lever with his hand, he climbed up on the ladder at the end of the last loaded car, signaled the engineer to give him a little slack and threw the lever with his foot, thus uncoupling the four empties from the rest of the train. At some time while Morgan was uncoupling the empties, or after they had been uncoupled and were rolling down grade in a northerly direction by their own momentum, Essary fell from the end of the car upon which he was standing, and was run over and dragged some distance. The engineer on the train discovered his body after the four empty cars had passed over it, when the train

again backed upon the compress spur to spot some of the loaded cars thereon.

It is the theory of plaintiff that the coupler which Morgan experienced difficulty in operating was defective, and that Morgan's failure to operate it before the train stopped resulted in a violent jerking of the cars which threw Essary from the top of the car on which he was standing. Plaintiff produced the only eyewitness to the accident, Ernest Robinson, who was at the time standing on the compress platform some 600 feet north of the switch, and west of the tracks. He testified that he saw Essary on the north end of the last empty car, at the brake wheel, apparently doing something with the brake; that his attention was diverted for a second, and when he looked again Essary was falling, but had not reached the ground. He testified that he was unable to tell whether the four empty cars were disconnected from the rest of the train when Essary fell. Neither he, nor any other witness produced by plaintiff, testified to any jerking of the cars at any time during the switching operation, although several experienced railroad men testified that stopping a train when backing up would ordinarily produce that effect. These witnesses also testified that Morgan should have had no difficulty in operating the coupling lever with his hand if the coupler was in good order, and there was any "slack" or space for play between the cars. They admitted that if there was no slack between the cars they could not be uncoupled easily, if at all. They also testified that when the train stopped the cars would naturally roll back down the grade, so that there would be no slack between them.

All members of the train crew testified that there was no jerk or jarring of the train when Morgan was uncoupling the cars. The engineer testified that only the engine had air brakes, and that when he received Morgan's first signal to back up he simply released the brakes and let the engine and cars roll down grade. A report of the accident made by Morgan at the

time estimates the speed of the train at two miles per hour during this backing movement, and the engineer and Morgan both testified that the train had rolled back only a very short distance before Morgan gave the stop signal. When Morgan gave the second back up signal for a little slack, the train traveled only six or eight feet before stopping, and Morgan gave the signal when he was upon the car with his foot on the lever ready to operate the coupler.

Plaintiff makes two contentions: (1) That the trial court erred in not correctly instructing the jury upon fundamental issues involved; and (2) that there was error in the admission of certain evidence.

Plaintiff's petition asserted liability of the defendants because of their violation of the Federal Safety Appliances Act and the Federal Employers' Liability Act. In this court she concedes that there was no evidence of a violation of the latter act.

Under the Federal Safety Appliances Act it is the absolute duty of railroads to equip all cars with automatic couplers which can be operated without the necessity of men going between the cars. The use of ordinary care and diligence in furnishing, repairing, and inspecting couplings does not relieve them from liability for nonperformance of this duty. Chicago, B. & Q. R. Co. v. United States, 220 U. S. 559, 31 S. Ct. 612. Contributory negligence is no defense where a violation of the act contributes to the injury or death of the employee. Spokane & I. E. R. Co. v. Campbell, 241 U. S. 497, 36 S. Ct. 683. Nor does the employee assume the risk of injury from the use of such defective coupling. 27 Stat. 532, 45 U. S. C. A. 7; Carter v. Chicago, R. I. & P. R. Co., 179 Okla. 292, 65 P. 2d 469.

While the instructions in the instant case were elaborate, and in many respects conflicting and confusing, we think that considered as a whole they sufficiently advised the jury that the principles of law above announced were to be applied to the facts in the case, as found by them from the evidence. At least from the record it does not appear that a miscarriage of justice resulted which would justify reversal. Section 3206, O. S. 1931, 22 O. S. A. § 1068; Schofield v. City of Tulsa, 111 Okla. 220, 239 P. 236; Horton v. Early, 39 Okla. 99, 134 P. 436.

We consider it unnecessary to set out at length the various instructions objected to by plaintiff, for the reason that the evidence wholly fails to show that the coupling operated by Morgan was defective, or that the manner in which he operated it had any causal connection with, or in any way contributed to, the death of Essary. It is clear from the evidence that the failure of the coupling to work when Morgan attempted to throw it by hand was not due to any defect in the coupling, but was caused by the running out of the slack between the cars due to the grade upon which the train was stopped. There is in the record no evidence tending to contradict the testimony of all the members of the train crew that no jerk or jar was occasioned by the uncoupling of the empty cars, or tending to show that anything connected with that operation could have occasioned or contributed to the fall of Essary from the car. In order for the jury to find for plaintiff, it was necessary for them to find that the coupling was defective, and that such defect caused or contributed to Essary's death. Assuming that the jury might reasonably draw from the evidence an inference that the coupler was defective, they must go further, and infer that the defect in the coupler caused a jerking or jarring of the car upon which Essary was standing, and that such jerking or jarring of the car caused or contributed to his fall. This would be pure conjecture or speculation, and is not permissible. It is just as reasonable to conclude that Essary slipped upon the wet roof of the car, or that in attempting to set the brake his hands slipped off the wet brake wheel, or his brakeman's billy or stick slipped, throwing him off balance. While it is true that negligence or proximate cause may be established by circumstantial evidence, yet where any one

of several conclusions consistent with the nonliability of defendant may be as reasonably drawn by unprejudiced minds from the evidence most favorable to plaintiff, as the conclusion which would render defendant liable, a verdict holding defendant liable is based on conjecture or speculation, and will not be permitted to stand. Highway Construction Co. v. Shue, 173 Okla. 456, 49 P. 2d 203; Western States Oil Co. v. Berkey, 185 Okla. 525, 94 P. 2d 905; Chicago, R. I. & P. Ry. Co. v. Pedigo, 102 Okla. 72, 226 P. 72; Hepner v. Quapaw Gas Co., 92 Okla. 9, 217 P. 438. If the coupling had been shown to be defective, in violation of the Safety Appliances Act, the further showing that its defective condition caused or contributed to the injury was essential to render the railroad liable. Southern Ry. Co. v. Stewart, 115 F. 2d 317; Davis v. Wolfe, 263 U. S. 239, 44 S. Ct. 64; Vigor v. Chesapeake & O. Ry. Co., 101 F. 2d 865.

Since the evidence would sustain no other verdict than the one rendered, the error in giving of the instructions was harmless.

Plaintiff's second contention relates to questions propounded to the executrix as to the financial condition of Essary at the time of his death, and whether he left her well fixed. In view of our decision on the first contention made, it becomes unnecessary to pass upon this question.

Affirmed.

CORN, V. C. J., and RILEY, GIBSON, and DAVISON, JJ., concur.