CONNELLY et al. v. JENNINGS.

No. 34518. Feb. 12, 1952.

Rehearing Denied March 25, 1952.

Application for Leave to File Second Petition for Rehearing Denied Dec. 16, 1952.

*252 P. 2d 133.*

Butler & Rinehart, Oklahoma City, for plaintiffs in error.

Schwoerke & Schwoerke, Oklahoma City, and Homer H. Bishop, Seminole, for defendant in error.

HALLEY, V.C.J. The parties will be referred to as they appeared in the court below.

The plaintiff's husband, Alfred Jennings, now deceased, was employed by defendants on a drilling rig in Garvin county, Oklahoma. He went to work on his tour about 3 o'clock in the afternoon of July 25, 1948. About 6 o'clock he came down from the swivel board to the derrick floor, which was about 70 feet below. He assisted other members of his crew with a piece of machinery, then took a drink of water and talked briefly with another member of the crew. He was seen walking toward a nine-step stairway leading off the derrick floor to the ground. This stairway was used by Jennings to get to the shale-shaker where he performed certain of his duties. Approximately five minutes after he was seen walking toward this stairway he was found by a fellow employee lying upon the ground east of the stairway, face down, with blood running from his nose and mouth, and there was a scuffed place on his forehead. He died on the way to the hospital a short time after he was found.

It was the plaintiff's contention that the deceased fell from the top of the stairway as the result of defendant's negligence in failing to provide safe appliances and a safe place in which to work, in that the stairway was an ordinary stairway with one handrail on the right side descending and none on the left; and also the top step was deeper and more narrow than the others, and in addition the runner on the left side descending did not reach flush to the derrick floor. Also, a rope had been nailed on the outer edge of each step a day or so prior to the accident.

The defendants set up five grounds for reversal. In their first proposition they urge that the demurrer to the evidence should have been sustained, because they claim that there was no evidence to show that the defendants had not furnished the deceased a reasonably safe place to work, claiming that there was nothing unusual about having the rope on the edge of the steps and that the stairway was a simple tool and no liability could be established, as the simple-tool doctrine precluded recovery. It does not seem that the plaintiff relies upon the rope on which to base her recovery, but relies upon the fact that the entire stairway was unsafe. We do not think the simple-tool doctrine has any place here, as we do not consider a stairway a tool, and we do not think that Nelson v. Wolverine Petroleum Corp., 189 Okla. 351, 117 P. 2d 787, has any application here, because a fixed stairway and a small ladder, such as was involved in that case, are entirely different instrumentalities. A ladder is simple in construction, and any defect ordinarily is quite apparent, and the employee exercises his own judgment as to its use. The stairway in this case was constructed in such a way as to invite use, but was entirely too steep for ordinary use, and was built in such a way as not to reveal its imperfections without inspection. It was such an instrumentality that the employee would rely upon the employer to make it safe. A distinction was made between a ladder and a stairway in Langston v. Fiske-Carter Const. Co., 180 S. C. 113, 185 S. E. 62, where a ladder was placed by the employer, in a building under construction, for use as a stairway by employees, and over which an employee carrying drinking water to the second floor of the building had no control. An employee who was injured when the ladder broke was held not barred from recovering for injuries on the ground that the ladder was a simple tool, since it was not being used as such at the time of injury. In the case at bar the instrumentality in ques-

tion was not a ladder and was always used as a stairway.

The defendants claim that the employees had control over the stairway as an instrumentality of their work. In this case the deceased was a derrick man. He had no duty or authority as to the construction of the derrick. He had the right to take it as he found it, and had the right to rely upon his employer to furnish him a reasonably safe place to work. The evidence fails to show that the employee had anything to do with the construction of the derrick. From the evidence it would seem that the derrick was constructed prior to the time the plaintiff went to work for the defendants as a derrick man on this particular well. The facts in this case and in Barnsdall v. Ohler, 48 Okla. 651, 150 P. 98, cited by defendants, are so different that that case has no application here. Here the employer furnished the derrick.

The defendants' second proposition is as follows:

"If there was any evidence of actionable negligence, the proof was insufficient to take the case to the jury that such negligence caused deceased to fall from the steps, or otherwise contributed to his injuries, because it only established that he stood on the derrick floor, started walking in the direction of the stairway, five minutes lated was found lying on the ground unconscious, with his forehead scuffed up some, blood coming from nose and mouth. and some blood on pipe, sill block and derrick near him. He could have reached the ground, started a nose bleed, leaned toward the derrick, and dropped to the ground. He could have twisted his ankle, slipped from carelessness, overstepped, jumped voluntarily from the stairs, and so on ad infinitum. The proof establishes merely a choice of possibilities."

We are definitely of the opinion that this stairway, at the bottom of which the deceased was found, was defective. The top step was narrow and the riser did not conform to the others; there was only one handrail, and the stairs were too steep. The steps by their construction invited the user to walk facing the stairway in ascending and with his back to it descending, but were so defective that it was easy for anyone to lose his footing or become overbalanced and tumble headlong down the stair. We do not think that Sheridan v. Deep Rock Oil Corp., 201 Okla. 312, 205 P. 2d 276, is applicable here, as we believe that the requirements for liability as set out in that case have been fulfilled. The applicable rule is that where the wrong is not willful and intentional, three essential elements are necessary: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff proximately resulting from such failure. We think all these elements are present in this case.

Defendants also cite Lawson v. Anderson & Kerr Drilling Co., 184 Okla. 107, 84 P. 2d 1104, in support of their position, but in that case we held that there was no negligence shown on the part of the employer, while in the case at bar the presence of negligence on the part of the employer is clearly established.

For their third proposition the defendants attack the instructions. They first urge that two instructions, 11 and 13, were erroneous because the word "casual" was used for the word "causal". This mistake was called to the trial court's attention when the instructions were given, and an ineffectual attempt was made by the court to correct it, but considering the discussion that was had at the time, we do not believe the jury was misled by this inadvertence. We cannot say, as is required by §1068, Title 22, O. S. 1941, that the error complained of here probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right. These errors were harmless.

The defendants next contend that instruction 13, which is as follows:

"You are further instructed that where a casual (sic) connection is

sought to be established by circumstantial evidence, there are two important questions which form a preponderance of the evidence you are to determine: (1) Does the inference of casual (sic) connection spring directly and reasonably from the facts in evidence, as distinguished from arising out of another inference interspersed between it and the facts? (2) Is there evidence to sustain the conclusion of greater probability that the injury came in whole or in part from the defendant's negligence than from any other cause?" misstates the law on circumstantial evidence. In light of Stockett v. Steele, Adm'r, 197 Okla. 134, 169 P. 2d 195; Highway Const. Co. v. Shue, 173 Okla. 456, 49 P. 2d 203, and Buxton v. Hicks, 191 Okla. 573, 131 P. 2d 1015, and of the facts in this case, we see no vice in this instruction. Perhaps it should have said: "If you answer these questions in the affirmative, the causal connection is considered established, but otherwise not"; but when all of the instructions are considered, along with all the evidence, the jury could not have been misled by this instruction as given.

The defendants further complain as to the propriety of instruction 12, which is as follows:

"You are instructed that the cause of an accident and the resulting death may be inferred from circumstantial evidence provided that the inference is reasonable though not absolute nor a necessary one, such evidence is not required to dispel all doubt and uncertainty. Neither is it required to eliminate the possibility that the injury was brought about by some other cause. It need only to appear more probably by a preponderance of the evidence that the accident was caused in whole or in part by the defendants' negligence, than by some other cause."

We think that the language in Fairmont Creamery Co. v. Rogers, 189 Okla. 320, 116 P. 2d 983, justifies this instruction.

The defendants also find fault with instruction 5, which is as follows:

"You are instructed that the law of this state provides that an employer shall be responsible in damages for personal injuries caused to an employee who was himself in the exercise of due care and diligence at the time he was injured, by reason of any defect in the condition of the machinery or appliances connected with or used in the business of the employer which arose, or had not been discovered or remedied owing to the negligence of the employer, or of any person entrusted by him with the duty of inspection, repair, or of seeing that the machinery or appliances were in proper condition.

"However, in this connection, you are instructed that where the injury or death is the direct result of the master's failure to obey the law as given to you here, the defense of assumption of risk is of no avail and cannot be (sic) by the master."

The first paragraph quotes the statute, Title 40, §178, O. S. 1941, and the second paragraph simply says that when the employer fails to obey the law he cannot plead assumption of risk. We wish to quote from 35 Am. Jur., Master and Servant, §304, p. 731:

"The general trend of authority is opposed to the view that assumption of risk is available as a defense to an action by an employee based upon breach of statutory duty. According to the decided weight and trend of modern authority, an employee does not assume the risk of injury from the employer's noncompliance with specific statutory duties imposed for the benefit and protection of employees, with the result that an employer who has violated a statutory duty owing to an employee cannot set up the defene of assumption of risk against a claim of the employee for injuries proximately caused by such violation of statute."

We early adopted this view and have consistently followed it. See Great Western Coal & Coke Co. v. Coffman, 43 Okla. 404, 143 P. 30; Harris-Irby Cotton Co. v. Duncan, 57 Okla. 761, 157 P. 746; Curtis & Gartside Co. v. Pribyl, 38 Okla. 511, 134 P. 71, 49 L. R. A. (N.S.) 471; Fenoglio v. Folsom-Morris

Coal Mining Co., 81 Okla. 227, 198 P. 69, 15 A. L. R. 1420.

When all the instructions given in this case are considered as a whole, we believe that the issues were properly covered.

For their fourth proposition the defendants urge that errors were committed in the admission of testimony (a) as to the hypothetical questions asked by plaintiff's counsel, in that the questions included facts not proved and omitted facts which were proved; and (b) Rules, Regulations and Practices pertaining to factories. We have studied the hypothetical questions and answers, and we think they are proper. The defendants complain that there was no evidence of good health and good spirits, yet the evidence showed that the man had been working several hours in a dangerous employment, 70 feet above the derrick floor, and that he came down and helped his fellow workmen on a piece of machinery, got a drink of water, and passed the time of day with the driller. To us this was a sufficient showing of good health and good spirits. The hypothetical questions did assume that the victim fell twelve feet. This fact was not definitely proved, but taking all the facts and circumstances of the case into consideration, the defendants were not prejudiced by these questions and answers. It was perfectly apparent that the deceased had been injured in a fall and that his death resulted. He was found at the foot of the steps, sprawled on the ground, face and stomach down, with cut places on his face and abrasions on his forehead. In answer to one question, the doctor said: "Assuming those facts to be true, it would be my opinion that the fall was the direct and only cause of the man's death, in view of other findings at the time of the autopsy"; and to another question he replied, "Bleeding from both the nose and mouth could result from a number of things. But assuming the facts in this question to be true, in my opinion, would substantiate that he had fallen and had received injuries to the head, possibly with a skull fracture." Certainly, considering the normal human being's desire to live, death by a fall due to the defective stairway is the only reasonable conclusion to be reached under the facts in this case. We said in Teeters v. Frost, 145 Okla. 273, 292 P. 356, 71 A. L. R. 179, that rational inferences deducible from testimony, as well as positive evidence itself, may form the basis for hypothetical questions.

As to the admission of the Rules, Regulations and Practices pertaining to factories, we do not consider it error here, because it was done to show what was standard oil-field practice and what would constitute a safe and proper place for an employee to work. In 56 C. J. S., Master and Servant, §25, p. 112, this statement appears:

". . . So also an order, rule, or regulation of a state department treating certain places of employment as factories, and requiring certain safeguards for workers therein, may be within the power of the department to make; but the court is authorized to determine the reasonableness and validity of the rule or order and will hold it invalid when it is unreasonable."

Red Hook Cold Storage Co. v. Dept. of Labor, 295 N. Y. 1, 64 N. E. 2d 265, and McKee v. New Idea (Ohio App.) 44 N. E. 2d 697, support this view. We do not see anything unreasonable in the trial court's disposition of this question. The witness on this matter was an employee of the Department of Labor. Some of his testimony was excluded. If the defendants did not believe the portion of his testimony that was admitted, they could have offered evidence to the contrary. We cannot see that they could be prejudiced by testimony of what is a proper stairway in a place where employees are required to work. The witness was shown to be experienced in such matters.

In their fifth proposition defendants urge that the trial court committed error when it refused to grant them a continuance in order to permit them to make application to the Federal court

to remove the case to that court after the demurrer to the evidence of the local defendant had been sustained. This question was determined adversely to the defendants' contention by the Supreme Court of the United States in Lathrop, Shea & Henwood Co. v. Interior Construction & Improvement Co., 215 U. S. 246, 54 L. Ed. 177. See, also, Beaver Dam Cranberry Co. v. Pennsylvania Ry. Co., 125 N. J. L. 369, 15 A. 2d 613. The defendants claim, however, that an amendment to Title 28, §1446, U.S.C.A., passed by Congress on May 24, 1949, changed this rule. The amendment is as follows:

"If the case stated by the initial pleading is not removable, a petition for removal may be filed within twenty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable."

We do not think this change was intended to affect a case that was in the process of being tried, but only applied to matters arising prior to trial. We realize that this view is subject to the criticism that a cause is permitted to be retained in the state court just by the strength of the pleadings and not by the facts; but this condition existed prior to the change, and Congress must have been aware of the Supreme Court's interpretation of the question, and if it intended to change the rule as to cases in process of trial it would have done so.

We find no reversible error in this case, so the judgment of the trial court is affirmed.

CORN, DAVISON, JOHNSON, O'-NEAL, and BINGAMAN, JJ., concur.