## WITT v. REED.

No. 18579.   Opinion Filed April 8, 1930.

Rehearing Denied July 1, 1930.

Walter E. Latimer and George S. Evans, for plaintiff. in error.

Mike Foster and Roger L. Stephens, for defendant in error.

LESTER, V. C. J.   The parties will be referred to as they appeared in the trial court.

W. F. Reed brought suit on three causes of action against the defendant, O. S. Witt. Only two causes of action were submitted to the jury, and the jury returned its verdict in favor of the plaintiff in the sum of $6,521.   Motion for new trial was filed by the defendant, and the court, upon consideration thereof, ordered that unless the plaintiff remitted all of said judgment except the sum of $2,500, a new trial would be granted. The plaintiff entered the remittitur thus ordered, and thereupon the motion for new trial was overruled.   The judgment was entered in favor of the plaintiff for the sum of $2,500, and the defendant appeals from said judgment.

The defendant sets forth 39 assignments of error.   The plaintiff, for his first cause of action, in brief, alleged that the defend-

ant was engaged in the practice of treating patients as a chiropractic doctor; that the plaintiff was afflicted with an "ordinary cold in the head"; and that the plaintiff employed the defendant to administer treatment; that the defendant informed the plaintiff that the treatments would relieve him from said ailment; and thereafter the defendant, in the course of treatment, and in disregard of the ordinary skill used by ordinary skillful doctors of chiropractic, did negligently and unskillfully fail to properly diagnose the physical condition of the plaintiff, and did unskillfully and negligently apply a greater amount of force to the body of the plaintiff than was reasonably necessary under the circumstances; and that in administering one certain treatment the defendant requested the plaintiff to sit upright on a small bench, and after placing his knee against the back of the plaintiff and after bracing himself, the defendant reached his arm around the head of the plaintiff and did then and there give the head of the plaintiff a quick jerk; that immediately thereupon the plaintiff did experience and suffer a sharp pain in the region of the fourth vertebra of the neck, and did immediately inform the defendant of such pain, and informed the defendant that he believed he had been injured; that from the time of the first treatment on a certain Sunday, plaintiff commenced to suffer and did suffer great and excruciating pain, which continued to grow worse in its intensity and severity until the evening of the following day, when the pain of the plaintiff was so sharp and severe and seemingly unbearable "the plaintiff called to his assistance a medical man or physician"; that thereafter plaintiff continued to suffer and his physical condition to grow worse until the plaintiff became delirious and unconscious and almost totally paralyzed over his entire body, and was unable to move his head or to suffer or permit anyone to move it for him; that as a result of the treatment of the defendant as aforesaid, the second, third, fourth, and fifth vertebrae of the plaintiff's neck were injured and dislocated; and that all of the pain and suffering of the plaintiff and his unconsciousness, deliriousness, and paralysis were the direct and proximate result of the displacement of said vertebrae; and that he had been permanently injured, etc.

Various motions and demurrers were filed by the defendant, which were by the court overruled.

Defendant's answer to the plaintiff's first cause of action consisted of a general denial.

The plaintiff's third cause of action consisted of a claim for medical and hospital bills. The defendant filed a counterclaim against the plaintiff's third cause of action in the sum of $21.

Assignments of error 1, 2, 3, and 4 relate to the pleadings in said cause, and we find that these assignments are wholly without merit.

Assignment No. 5 relates to the testimony of the plaintiff while on the witness stand in reference to his inability to perform heavy work. This assignment is without merit.

Assignment No. 6 alleges prejudicial error on account of the examination of the defendant by the jury of a knot on the plaintiff's neck. This also is without merit.

Assignment No. 7 is an objection to the plaintiff's testimony in reference to the payment of hospital and medical bills while sick. This is likewise without merit.

Assignment No. 8 relates to the testimony of Helen Reed as to the appearance of the plaintiff after he was stricken. There is no error in the admission of this testimony.

Assignment No. 9 relates to the testimony of Dr. Meyers. We have carefully examined the entire testimony of Dr. Meyers contained in the record, and do not find any substantial error therein.

Assignment No. 10 relates to the statement of Dr. Meyers that exhibit No. 1 showed the partial dislocation of the cervical vertebra, and plaintiff alleged that the fourth cervical vertebra was dislocated. As we view this case, there was no change or amendment relating to the manner in which the plaintiff was alleged to have been injured, and under the theory adopted by all parties it was immaterial as to which particular vertebra was involved.

Nor is there any merit in assignment No. 11, which is based upon the court's refusal to continue said cause on account of certain amendments to plaintiff's petition.

Under assignment No. 12 we do not think the record justifies the construction placed upon Dr. Meyers' testimony by the defendant.

Assignment No. 13 relates to Dr. Supler being permitted to testify as an expert of the chiropractic school of practice. Dr. Supler testified that for several years he had been a student of that school of practice and that he had received a diploma from that school of study and knew its teachings and practice.

Assignment No. 14 involves practically the same proposition as that embraced in assignment 13.

Assignment No. 15 relates to the permission of the court in allowing the Sister Beatrice to testify in reference to exhibits Nos. 1 and 2. The testimony of Sister Beatrice relates only to the identification of these exhibits, and its probative force was a question for the jury.

Assignment No. 16 and assignment No. 17 relate to the introduction of certain X-ray pictures. There is no merit in these last two assignments.

Assignment No. 18 is based upon the permission of the court in allowing Dr. Wilson to testify. Dr. Wilson had certain X-ray pictures taken showing the condition of the fourth, fifth, sixth, and seventh cervical vertebrae of W. F. Reed. We think the evidence was admissible. Likewise was the evidence admissible under assignment of error No. 19

Assignment No. 20 relates to the overruling of the defendant's demurrer to the plaintiff's evidence. There was sufficient evidence upon the part of the plaintiff to justify the cause being submitted to the jury.

Assignment of error No. 21 relates to the permission of the court in allowing the plaintiff to amend his petition so as to show dislocation of the second cervical vertebra, injury of the first vertebra, and the fracture of the fifth vertebra, also fracture of the fourth spinal process.

The record in this case shows that the plaintiff was suffering from a cold. He sought treatment from the defendant; that from one of these treatments plaintiff alleged that he received a severe injury of a permanent nature.

Dr. E. C. Wilson testified that he had been a regular practicing physician since 1914; that he specialized in X-ray work; that X-ray pictures were taken of the plaintiff's neck and the upper part of the thorax. Dr. Wilson testified in part (C.-M. 188-189):

"Q. Directing your attention to that part of the photograph known as the neck, or upper region of the cervical, I will ask you to state what the pathology there shows on that photograph? A. There's a fracture through the body of the fifth cervical vertebra; almost if not complete destruction of the fourth cervical vertebra, and there's a callous on part of the upper surface of the sixth lumbar vertebra—sixth thoracic, what I want instead of lumbar. Q. With reference to the second and fourth vertebrae, what is the condition as shown by that? A.

The fourth has almost a complete destruction of the spinous process. Q. What vertebra? A. The fourth cervical. Q. You just stand up before the jury and just show them in there; explain the condition of the region in and about the fourth vertebra. A. Here's the spinous process of the third, and there's the spinous process of the fifth; they are absent in the fourth, practically so. Q. Where is the fourth? A. This is the fourth here; now right in along there, there's one above and one below; they are not in that one below. Q. Explain to the jury what you mean by spinous process. A. It is this part sticks back in your neck and back. Q. Can you point out on the photograph? A. Here they go all the way up there; they divide there. There's two of them on either side; here's the spinous processes. Q. That's what you mean by spinous processes? A. Yes, sir."

From the record we think that the petition stated a cause of action, that the evidence was sufficient to support the allegations of the petition; and that the only serious question is whether the court committed error in giving certain instructions.

Section 8901, C. O. S. 1921, among other provisions, defines chiropractic as follows:

"Chiropractic is hereby defined to be the science that teaches health in anatomic relation and disease or abnormality in anatomic disrelation, and includes hygienic and sanitary measures incident thereto."

The above definition was submitted to the jury at the request of the defendant.

The court gave the following instructions to the jury:

"You are instructed that under the law a physician, chiropractic or otherwise, is bound to bestow such reasonable and ordinary skill and diligence in treating patients as physicians and surgeons in the same neighborhood, in the same line of practice, ordinarily have and exercise in like treatment of his patients tested by the rules and principles of the school of medicine to which he belongs, and not by those of some other school.

"And in this connection you are instructed that if the plaintiff has established by a preponderance of the evidence in this case that in August, 1924, he employed the defendant, a doctor of chiropractic, holding himself out to the public generally and to this plaintiff in particular as being ordinarily skilled in his profession, to treat this plaintiff chiropractically for certain ailments, and that as a proximate result of the failure of this defendant to bestow such reasonable and ordinary care, skill, and diligence as physicians in the same line of practice, in the same neighborhood, ordinarily have and exercise in like cases, that certain vertebrae of plaintiff's neck were dislocated, and plaintiff was injured thereby as alleged in his petition, then and in that event your verdict should be for the plaintiff and against this defendant.

"If on the contrary, however, you believe from the evidence in this case that in his treatments of this plaintiff this defendant bestowed upon him such reasonable and ordinary care, skill, and diligence as physicians and surgeons in the same neighborhood, in the same line of practice, ordinarily have and exercise in like cases, when tested by the rules and principles of the school of medicine to which this defendant belongs, then and in that event the plaintiff cannot recover, and your verdict should be for the defendant."

It will be seen that the court submitted to the jury the question whether or not the defendant used the ordinary skill and care required of the defendant's particular school of practice, and that before the jury found for the plaintiff it must find that said defendant failed to use such ordinary care and skill as was used by the said school of practice, and that the said want of ordinary skill and care first was the proximate cause of the plaintiff's injury.

We do not think that the defendant successfully pointed out any prejudicial error in these instructions.

The defendant quotes the case of Kernodle v. Elder, 23 Okla. 743, 102 Pac. 138. We do not think the facts in that case are similar in their relation to the law as found in the instant case. In the instant case the plaintiff charges that the entire injury to him was on account of the negligence and want of care in administering treatment to the plaintiff. In the instant case it is claimed that the defendant, by reason of his carelessness, negligence, and want of professional skill, set in motion such force as to cause a new and independent injury and affliction to the body and person of the plaintiff.

The defendant also cites the case of Cassingham et al. v. Berry, 67 Okla. 134, 150 Pac. 139. In that case the jury returned a verdict for the defendant, and on appeal this court held that a certain instruction submitted to the jury was correct and affirmed the judgment of the district court. This court in syllabus, parag. No. 2, said:

"An action against a surgeon for negligently leaving gauze sponges in the body of the patient upon whom he had operated, which resulted in her death. The defendant is entitled to an instruction on his theory of defense. and it is not error for the court to instruct the jury that, though they believe the

defendant did leave the sponges in the body of the patient, and her death was the natural and proximate result thereof, yet if they also believe that, in the performance of the operation, he exercised ordinary care in keeping track of the sponges and seeing to it that they were all removed before the incision was closed, he could not be held liable for negligence. The gist of such action is not based upon the result of the operation, but upon negligence in its performance, and the rights of the parties must be tested by whether or not the defendant exercised that degree of care in performing the operation that is imposed upon him by law."

We find that the instructions of the court in the instant case are such that they informed the jury that if the defendant bestowed upon the plaintiff such reasonable and ordinary care as a physician in the same line of practice would ordinarily have practiced in such a case, then, in that event, the plaintiff could not recover and the verdict should have been for the defendant.

The jury evidently found from the evidence that the defendant did not use ordinary care and skill in the treatment of the plaintiff, as used by practitioners of the same character and skill. We fail to find any prejudicial error in the trial of this cause, and judgment is affirmed.

HUNT, CLARK, CULLISON, SWINDALL, and ANDREWS, JJ., concur. MASON, C. J., and RILEY and HEFNER, JJ., absent and not participating.