## BERRY v. PARK.

No. 28475.   April 25, 1939.

Rehearing Denied May 16, 1939.

Wilcox & Swank, for plaintiff in error.

Brown Moore and Guy Horton, for defendant in error.

DAVISON, J. This is an appeal from a judgment of the district court of Payne county. The action was instituted by the defendant in error, hereafter referred to as plaintiff, against the defendant or plaintiff in error, to recover damages for injuries alleged to have been inflicted upon the person and auto truck of the former as the result of the latter's negligent operation of a sedan automobile. The cause was tried to a jury upon the general issue raised by the pleadings of the two parties. The jury returned a verdict of $2,000 in favor of the plaintiff, and the court rendered judgment in accordance therewith. The defendant's motion for a new trial was overruled, and he thereafter perfected this appeal.

The errors assigned are presented in the briefs under four propositions, the first of which is as follows:

"(1) Error of the court in overruling the motion of the defendant to discharge the jury and declare a mistrial because of the remarks of counsel for plaintiff, which, in effect, advised the jury that the risk was covered by insurance."

The counsel's remarks complained of here occurred during the voir dire examination of the jurors. It was then that he interrogated the jurors with the following question, to wit:

"Do you know Mr. Crowe, the adjuster for Mr. Berry, setting over there, the man from Oklahoma City?"

The repetition of the above question to several jurors was made the ground for the defendant's motion that the jury be discharged and a mistrial be declared, before any evidence was introduced in the trial of the cause. The defendant now contends that said motion should have been sustained because there could have been but one purpose for asking the jurors such a question, namely, to advise them that he was protected by liability insurance. His counsel asserts that "the term 'adjuster' is almost synonymous with the term 'insurance agent' or 'insurance claim adjuster'" and was designedly or purposely used by the opposing counsel to create prejudice in the minds of the jurors. The plaintiff denies the alleged implication of the term and any wrongful purpose or ulterior motive in its use. In support of this denial it is argued that the quoted question did not have the effect alleged, because it does not contain the word "insurance." It is asserted that the wording of the question indicated only that Mr. Crowe was an "agent" for the defendant. In further support of their contention, counsel cite the following statement one of them made to the court after the defendant's objection to the question was made:

"I want the record to show that the questions asked the jury were in good faith for the reason that the Crowe family, in which there are four or five lawyers, are widely known in this state, and for the reason that Mr. Crowe approached me this morning on behalf of the defendant, Berry, to settle the case."

Counsel for the defendant take the position that the above statement cannot be recognized as a valid explanation or sufficient excuse for the interrogation complained of, and that it is wholly inadequate as a showing of the good faith that must motivate such questioning.

It has long been recognized that the examination of jurors with reference to their interest in or connection with insurance or insurance companies, where such a subject has no obvious relation to a lawsuit, is dangerous because the same has a tendency to obstruct and often does defeat the ends of justice by causing the jurors to wonder what insurance or an insurance company has to do with the case and thereupon to suspect or quite naturally infer and ultimately conclude that the defendant is protected by some form of liability insurance and will be indemnified or saved harmless from loss in the event judgment is rendered against him. The courts have felt constrained to allow such examinations, however, in the interest of procuring jurors that are free from bias and prejudice. Even where on the face of the pleadings or the issues presented there is no apparent connection whatsoever between the subject of insurance or persons or concerns in the insurance business and the controversy to come before them, yet there may be prospective jurors who, because of their experience with indemnification against such claims as the one sought to be established or their association or relationship with individuals or concerns in said business of indemnification, will naturally or unconsciously be unduly and unjustly influenced thereby in some manner before the evidence is all presented and the verdict is settled. It is because of this corresponding danger that such questions on voir dire examinations are allowed at all and it is recognized that every precaution should be taken to restrain counsel from going beyond the limits of the questioning necessary to procure a jury free from favoritism toward the defendant as well as prejudice against him in such actions. It is unnecessary to cite authorities for these statements. The principles enunciated and considerations named are mentioned or discussed in the following exhaustive annotations on the subject: 56 A. L. R. 1454; 74 A. L. R. 860; 95 A. L. R. 388; 105 A. L. R. 1319. In our opinion the only logical conclusion to be reached from the great body of judicial expression on the subject is that the unnecessary injection into a trial before a jury, of prejudicial questions or remarks concerning the indemnification of the defending party. is ground for reversal. The good or bad faith of the counsel voicing the prejudicial questions is germane only to the subject of the necessity for such questions, regardless of previous expressions or intimations of the various courts to, the contrary. If it appears or is made to appear that there is ground or good reason for counsel thinking that such questions on voir dire examination were necessary to obtain a jury free from bias or prejudice against his client and partiality to his adversary, then there is said to be justification for questioning on that subject, because of the likelihood that the prospective juror may have had some relation or experience or, have some knowledge that would tend to create in , him favoritism for the adversary, and the impor-

tance of protecting the plaintiff against that may balance or offset the corresponding importance of protecting the defendant against a likely prejudice in the opposite direction. See New Aetna Portland Cement Co. v. Hatt, 145 C. C. A. 497, 231 Fed. 611, 13 N. C. C. A. 334. Thus, though the form or contents of the questions formulated during the examination may well be capable of creating the suspicion or belief that the defendant is indemnified, yet, if the defendant is in fact indemnified (Bibb Mfg. Co. v. Williams, 36 Ga. App. 605, 137 S. E. 636), or the interrogator has knowledge which would lead him to reasonably believe that the indemnitor has taken or will take part in the controversy, he may interrogate the prospective jurors about their relations or experience with regard to indemnification and indemnifying companies, and even though the questions may be somewhat prejudicial in their tenor, yet such examination will not constitute cause for reversal of the judgment obtained. As authority for this statement, see, in addition to the case cited above, other cases referred to in 56 A. L. R., page 1459, f.f. When the situation is different, however, and there is nothing in the actual circumstances to justify such questioning, then the same is irrelevant and inexcusable and will constitute cause for reversal. Such interrogation is to be used as a "shield to protect the client and not a dagger to stab the opponent." Adams v. Cline Ice Cream Co., 101 W. Va. 35, 131 S. E. 867, and see, generally, Jones v. Missouri Freight Transit Corp., 225 Mo. App. 1076, 40 S. W.2d 465; Daniel v. Asbill, 97 Cal. App. 731, 276 P. 149; Wendell v. City Ice Co. (Mo. App.) 22 S. W.2d 215; Beasley v. Bond, 173 Okla. 355, 362, 363, 48 P.2d 299, 307, 308; Vega v. Evans, 128 Ohio St. 535, 191 N. E. 757, 95 A. L. R. 381; and annotations at 56 A. L. R. 1418, 1456-1488, 1529, 1542. 1544-1551. Although in Fike v. Peters, 175 Okla. 334, 52 P.2d 700, this court held that, "if the plaintiff gets this matter into the case by questionable practice, the court upon proper application should **penalize** him by directing a mistrial," we now submit that the object of the rules on this subject is not to penalize either party, but to protect the rights of both in so far as reasonably possible. Our present views more nearly conform to the following quotation from Harris v. Elliot, 178 Okla. 98, 61 P.2d 1089:

"On another occasion we have said that the question of design or bad faith on the part of counsel or plaintiff in injecting the insurance element into the trial in an irrelevant manner is not so much to be considered as is the question of the prejudicial or damaging effect of the declarations. Beatrice Creamery Co. v. Goldman, supra. The fundamental and controlling question in such case is whether the reference to insurance has prevented defendant from having a fair trial of the issues."

Good faith is not the crux of the matter. 87 U. of Penn. L. Rev. 234. As was stated in Adams v. Cline Ice Cream Co., supra, "* * * if the statement prejudices the jury, the prejudice works its bane, no matter what motive actuates it. The real test is the effect on the jury."

Sometimes the "effect on the jury" of questions or remarks concerning an insurer is readily apparent from the record itself, as where the verdict is excessive or the evidence is inadequate or insufficient to support a judgment for the prevailing party in any amount. In such cases no difficulty is encountered in conclusively determining the harmful or injurious effect or result of the prejudicial matter. But there may be cases in which the harm wrought is not so patent. We think the present case may constitute a good example of the latter group. It is unnecessary, however, to examine the evidence or to consider the size of the verdict here, for such a review would not necessarily reveal the harm wrought by the conduct complained of. As was said in Whitman v. Carver, 337 Mo. 1247, 88 S. W.2d 885, "if a losing defendant in a damage case cannot complain of the injured party wrongfully getting before the jury that the defendant is covered by insurance, because the evidence is sufficient to support a finding for plaintiff and because the verdict is not excessive, then in such case there would be no limit to which a plaintiff could go in advising the jury that the defendant was covered by insurance." It was also said:

"Defendant did not confess his negligence, nor is the evidence as to his negligence such that reasonable minds could not differ. * * *

"Defendant's evidence tended to show that he was not negligent and he had the right, under the facts here, to go to the jury on the issue of his negligence free from the chance of this issue being lightly considered by the jury because they might believe that he was protected by insurance. A plaintiff 'should never try his case on the theory that, if he can in some way get the jury to understand that an insurance company will ultimately have to pay the damages assessed, he is sure to **win his case** and get a big verdict.' (Emphasis ours)

Olian v. Olian, 332 Mo. 689, 59 S. W.2d 673, loc. cit. 677. We do not mean to imply that plaintiff's case was tried on such theory, but we quote the excerpt from the Olian Case to show that the **amount of the verdict may not be the only thing** that may be affected when the jury has paraded before them the subject of insurance as in this case. Plaintiff had **no valid reason to introduce the subject of insurance in this cause.** (Citing authorities.)" (Emphasis ours.)

Our opinion in Fike v. Peters, supra, contains the following apt quotation:

"If he [the plaintiff] deliberately sets out, though in an indirect way, to inform the jury by improper evidence or arguments that the loss, if any, will fall upon an insurance company, his conduct is deemed so prejudicial as to warrant a reversal of the judgment, if for the plaintiff, and the granting of a new trial. * * *"

We are inclined to agree with counsel for the defendant upon the significance of the question the plaintiff's counsel asked the jury on voir dire examination that comprised the basis of the first assignment of error argued in the briefs. The word "adjuster" has been so closely associated with the term "insurance" in the investigation and trial or settlement of claims arising out of automobile accidents during recent years that in common parlance or usage and in the minds of the public generally it has become synonymous with or an abbreviated way of referring to an "**insurance** adjuster." The custom of procuring from insurance companies indemnification against such claims has become so widespread of late, especially among large corporations and persons of financial means or wealth (as counsel and the record indicate the defendant is), that the courts on several occasions have noticed or specifically recognized it, though in most instances these facts have been cited to show the harmlessness of calling the jurors' attention to the existence of a condition in the individual case that they perhaps already suspected or perceived. See Carter-Mullaly Transfer Co. v. Bustos (Tex. Civ. App.) 187 S. W. 396; Note 56 A. L. R. 1549, 1550. Because of this current common knowledge, the slightest intimation under certain circumstances is all that is necessary to transform a suspicion into an actual belief or conviction in the minds of present day jurors that a defendant is insured. For the foregoing reasons, we cannot bring ourselves to the conclusion that counsel's use of the word in question is "too remote and too far-fetched to attribute to it" any "pernicious

effect" as we said of the use of the same word in Teeters v. Frost, 145 Okla. 273, 292 P. 356. In addition to other considerations, by no means the least important, in the present case, is that no excuse or justification for the question complained of is shown. As far as the record otherwise shows, no insurance company was interested in the cause. We submit that the statement (hereinbefore quoted) dictated into the record by the offending counsel after objection to the question by opposing counsel, falls far short of a showing of necessity for or good faith in propounding the question. In his brief, said counsel argues that his use of the term "adjuster" in referring to Mr. Crowe effected no further implication than that Crowe was an "agent" for the defendant. In our opinion such an assertion merely begs the question and makes one wonder why, then, did counsel not use the word "agent" instead of a term as suggestive as "adjuster." We will not say that this word was deliberately used as we did the remarks that were held ground for reversal in Wagnon et al. v. Brown, 169 Okla. 292, 36 P.2d 723. The word may have been used unadvisedly, inadvertently and thoughtlessly, but the cause, whatever it may have been, in no way changes the result: the effect on the minds of the jury is not changed nor the resulting injury or prejudice diminished, mitigated, or alleviated by a proper motive. And we are not shown the necessity of protection for his client or any other proper motive, excuse, or justification for the question complained of. We realize that in many instances there may be cause for questioning jurors concerning their acquaintance or relations with persons or concerns who, though not appearing as parties in a controversy, may be prospective witnesses or be otherwise connected with the investigation or litigation of a claim. See 56 A. L. R. 1484. Nothing of that sort, however, is shown with reference to Mr. Crowe, in the present case. Counsel's statement made out of the hearing of the jury that "the Crowe family, in which there are four or five lawyers, are widely known in this state, and for the reason that Mr. Crowe approached me this morning on behalf of the defendant, Berry, to settle the case" of course would not serve to dispel any suspicion as to the defendant's indemnification that may have been created in the minds of the jurors by his previous use of the word "adjuster" in referring to Mr. Crowe, and it certainly fails to show an honest belief on his part of the necessity, in order to protect the rights

of his client, of asking the question propounded. If, as we would now be led to believe, because of the evidence to be introduced or because of Mr. Crowe's activities or interest in the investigation of the plaintiff's claim or in assisting in defending against it, counsel had thought it necessary to ask the question merely for the purpose of ascertaining whether any of the jurors were acquainted with Crowe, it is indeed difficult for us to see the necessity of having identified him as an "adjuster." especially in view of the fact that he was present in the courtroom and was pointed out in the jury's plain view. After a careful examination of the record in the present case and a thorough consideration of the circumstances surrounding the conduct complained of, we hold that the question propounded to the jury by the plaintiff's counsel on voir dire examination, which constitutes the error discussed in the defendant's first proposition, was prejudicial and ground for reversal. Since a new trial must be ordered on that account, it is unnecessary to consider the other assignments of error presented.

The judgment of the trial court is hereby reversed and said court is directed to grant the defendant a new trial.

BAYLESS, C. J., and RILEY, OSBORN. GIBSON, and DANNER, JJ., concur. HURST, J., not participating. WELCH, V. C. J., absent.