CASUALTY RECIPROCAL EXCHANGE et al. v. SUTFIN.

No. 31399. Nov. 20, 1945.

Rehearing Denied Dec. 18, 1945.

Application for Leave to File Second Petition for Rehearing Denied March 12, 1946.

166 P. 2d 434.

Butler & Rinehart, of Oklahoma City, and Horsley & Epton, of Wewoka, for plaintiffs in error.

Pryor & Wallace, of Wewoka, and Bishop & Bishop, of Seminole, for defendant in error.

CORN J.   Esther Sutfin, as administratrix of the estate of Fitzhugh Sutfin, deceased, brought this action for damages for wrongful death of and for pain and suffering of Fitzhugh Sutfin, deceased, against S. R. Hazelrigg, d/b/a S. R. Hazelrigg Trucks, and his insurance carrier, Casualty Reciprocal Exchange, a corporation.

The plaintiff alleged that the defendant Hazelrigg was negligent in knowingly ordering the deceased to go on the job while sick and without rest and work without relief for more than three days and in furnishing him a car known by said defendant to have a defective steering gear, which were the direct and proximate cause of the accident and the resultant injury to and death of Fitzhugh Sutfin, deceased. Her first cause of action was for damages for wrongful death and the second for the pain and suffering. The Casualty Reciprocal Exchange, a corporation, was made a party defendant by reason of the fact that it was the insurance carrier on the motor vehicles operated by defendant Hazelrigg and liable to the extent of such insurance for the damages caused by the negligence of such defendant in the operation thereof.

Motions to strike and demurrers predicated upon the improper joinder of the insurance carrier were overruled and exceptions saved.

Both parties separately answered by way of a general denial and then alleged that the injury and death of Sutfin, an employee, did not come within the purview of the insurance coverage and that therefore the insurance company was improperly joined as a party defendant. In addition, it was alleged that the accident was the result of the decedent's failure to exercise ordinary care.

Fitzhugh Sutfin, deceased, had been in the employ of the defendant S. R. Hazelrigg, d/b/a S. R. Hazelrigg Trucks, for about five years prior to his death. He was what was known as a "truck pusher." The defendant Hazelrigg owned and operated 25 or more trucks under a certificate of convenience and necessity from the Corporation Commission of the State of Oklahoma, and as required by law insurance coverage was provided by the Casualty Reciprocal Exchange. The defendant carrier hauled oil field equipment and other equipment for hire. It was the duty of the deceased to go on the various jobs and see that the men were working, oversee the loading of the trucks, and in every way facilitate the moving of the freight. Hazelrigg furnished the deceased an automobile to carry on the work. He was on call 24 hours a day. He lived in the yards maintained by his employer in Seminole.

The record discloses that on Thursday evening before the accident he drove from the yard in Seminole to Cushing for the purpose of taking a tire and tube to a disabled truck; that he didn't get home until 3 or 4 o'clock a. m.; that at the time he was suffering from a bad cold and running a temperature; that he immediately went to bed; that about two hours later, around 6 a. m., his boss called him by telephone; that his wife advised the boss that he was ill and was in bed; the boss advised her it was an emer-

gency and she called the deceased to the phone; that the deceased told the boss he was sick and couldn't work; that after he was told it was an emergency he agreed to go on the job; that the defendant Hazelrigg was to move a rig for the Shell Oil Company; said company demanded that the deceased oversee the job; that he was on the job all Friday night and Saturday morning; that the truck drivers and helpers worked in shifts; that the work was being done near the town of Cromwell, Okla.; that about noon on Saturday the deceased started to drive the car furnished him to town to get lunches for the men; that on the way he passed a truck and that after going about 150 feet past the truck his car swerved off the road into the ditch; that he received serious and painful injuries from which he died three days later; that at the time he passed the truck he was driving about 30 miles per hour.

The evidence on behalf of the plaintiff further shows that the car furnished the deceased was a 1940 Chevrolet with approximately 70,000 miles on it at the time of the accident; most of the miles were put on it over rough oil field roads; several months prior to the accident the defendant carrier sold it to a former employee; during the time said employee owned it he had considerable trouble with the steering gear; the car would weave back and forth across the road, at least once it had gotten out of control and gone into a ditch by reason of the steering gear having come down: he had a drag length put on the steering gear; he continued to have the same trouble off and on and about two months after the new drag length had been put on he found it about worn into and he again had it replaced; because of the condition of the car he quit using it about the 1st of April, 1941; the defendant carrier came after it two or three weeks thereafter; and at the time he delivered the car to said defendant he told him the steering gear was bad and should be replaced, and thereafter the said defend-

ant turned the car over to the deceased without making any repairs and within a few weeks thereafter the accident involved herein occurred. An expert mechanic who testified on behalf of the plaintiff stated that a bad steering gear, bad king pins, worn out bushings, tie rods or drag length, flat springs, loose camber and caster or axle could have caused the car to swerve across the road and get out of control.

The evidence on behalf of defendants as to the condition of the car was to the effect that Hazelrigg had no knowledge of the defective condition of the steering gear; that he drove it a few times before turning it over to the decedent and noticed nothing wrong with it; the decedent made no complaint about the condition of the car: said defendant maintained a garage and advised all employees to take the cars and trucks to the garage when repairs were needed; after the accident the only repairs made were things caused by the accident; no part of the steering gear had been replaced; and since the accident said defendant had driven the car to California and back without any trouble.

The trial court overruled demurrers to the evidence and motions for directed verdict by each of the defendants. Exceptions were saved.

From a verdict and judgment for plaintiff each defendant appealed. The parties are referred to herein as they appeared in trial court.

The defendants first contend that the evidence failed to show the existence of negligence on the part of the defendant carrier and that the negligence of such carrier was the proximate cause of the injuries resulting in the death of plaintiff's decedent.

It is the settled rule in this jurisdiction that if there is any evidence which reasonably tends to prove either directly or indirectly or by permissive inference the essential facts; the verdict of the jury must stand. Marlernee Oil Co. v. Kerns, 187 Okla. 276, 102 P. 2d 836. Negligence may be established by circumstantial evidence and the reasonable inferences to be drawn therefrom, and the proximate cause of the injury may also be determined from circumstantial evidence, Griffin Grocery Co. v. Scroggins, 145 Okla. 9, 293 P. 35; Marland Refining Co. v. Snider, Adm'r, 125 Okla. 260, 257 P. 797. Where there is competent evidence on the question of negligence introduced from which reasonable men might draw different conclusions, it is one for the jury, and under like circumstances the question of proximate cause is one for the injury. Palacine Oil Co. v. Philpot, 144 Okla. 123, 289 P. 291; Highway Const. Co. v. Shue, 173 Okla. 456, 49 P. 2d 203.

There is authority to the effect that where overexertion due to excessive hours of employment exacted by the employer caused or contributed to accidental injury, the employer is liable, 35 Am. Jur. 628; Woodruff v. Phillips, 138 Okla. 77, 280 P. 449; Great Northern Ry. Co. v. Couture, 14 K. B. 316, 7 Ann. Cas. 190; Republic Iron & Steel Co. v. Ohler, 161 Ind. 393, 68 N. E. 901. Of course, where the employee merely overtaxes himself, there is no liability on the part of the master. The employee must determine for himself whether his health and strength are adequate for the job to be performed, Warden-Pullen Coal Co. v. Wallace, 176 Okla. 604, 56 P. 2d 802. And where the master predicates his defense on the theory that the accident was due to employee falling asleep while driving, he is entitled to an instruction covering his theory, Evlo Refining Co. v. Moore, 192 Okla. 576, 137 P. 2d 911.

Applying the above stated rules to the case at bar, we conclude that the evidence was sufficient to go to the jury as to whether the excessive hours of employment exacted by the defendant carrier under the circumstances pertaining caused or contributed to cause the accident which resulted in

injury and death of plaintiff's decedent.

We have held the master must exercise ordinary care in furnishing the servant a reasonably safe appliance with which to perform his duties. Highway Const. Co. v. Shue, supra; Buxton v. Hicks, 191 Okla. 573, 131 P. 2d 1015; Cabanne v. St. Louis Car Co., 178 Mo. App. 718, 161 S.W. 597. And where the master was advised that the steering gear of the car was bad and made no effort to check or repair it and did not advise the employee of such defect, such owner is liable for an injury to his employee caused by an accident resulting from the defective condition of such car. Albers v. Shell Co. of California et al., 104 Cal. App. 733, 286 P. 752; Tannahill v. Depositors' Oil & Gas Co. et al., 110 Kan. 254, 203 P. 909; Eastman et ux. v. Silva et al., 156 Wash. 613, 287 P. 656; Cabanne v. St. Louis Car Co., supra.

We cannot agree with defendants' contention that the evidence of the prior condition of the car was too remote and therefore inadmissible. The very nature of the defect coupled with the fact that after repair the same condition developed forces us to the conclusion that evidence of the condition of the car three or four months prior to the accident was within a reasonable time before the accident and tended to show its condition at the time in view of the fact that the evidence further shows that such condition had not been corrected or changed. The evidence further shows that the proximate cause of the accident could have been the condition of the car. We therefore hold that the evidence is sufficient and same was properly submitted to the jury for determination.

Under the record in this case the rule in City of Edmond v. Washam, 190 Okla. 140, 121 P. 2d 300, and the other cited cases has no application. The record shows no duty on deceased to maintain the car, neither does it show any knowledge on his part of the defect. In fact, there is evidence that he thought the car was in good running order. (The trial court sustained objections to the evidence last referred to; however, it did not withdraw it from the consideration of the jury.) The defendant Hazelrigg, shown to have knowledge of the defect, failed to have it repaired and failed to advise the deceased as to such defect.

The defendants next contend that the policy of the defendant Casualty Reciprocal Exchange did not cover plaintiff's decedent nor did it cover the automobile driven by decedent at the time of the accident.

47 O. S. 1941 § 169 provides:

"No certificate of convenience and necessity, or permit, shall be issued by the Corporation Commission to any motor carrier until after such motor carrier shall have filed with the Corporation Commission a liability insurance policy or bond covering public liability and property damage, issued by some insurance or bonding company or insurance carrier, authorized to do business in this State and which has complied with all of the requirements of the Corporation Commission, which bond or policy shall be approved by the Corporation Commission, and shall be in such sum and amount as fixed by a proper order of said Commission; and such liability and property damage insurance policy or bond shall bind the obligor thereunder to make compensation for injuries to, or death of, persons, and loss or damage to property, resulting from the operation of any such motor carrier for which such carrier is legally liable; . . ."

The purport of this section is that the insurance company shall be bound to the extent of the policy approved by the Corporation Commission to pay damages "for injuries to, or death of, persons . . ., resulting from the operation of any such motor carrier for which such carrier is legally liable." There is no limitation as to what persons are covered thereby but provides coverage for injury to or death of persons for which the carrier is legally liable. No intent to limit the common law liability of the carrier to its employees or to

exclude them from the coverage of the policy or bond is in any way indicated therein. Continental Casualty Co. v. Shankel, 88 F. 2d 819. As above set forth, the statute requires coverage for that which the carrier is legally liable. It cannot be questioned that the motor carrier is legally liable for accidental injury or death of an employee by reason of negligence on its part.

47 O. S. 1941 § 162 grants to the Corporation Commission "the power and authority by general order or otherwise to prescribe rules and regulations applicable to any and all motor carriers" to effectuate statutory purposes and requirements. See Commercial Standard Insurance Co. v. Garrett, 70 F. 2d 969. By such rules and regulations, however, it can in no way change or amend the statutes; same must be in harmony with such statutes, Jacobsen et al. v. Howard, 164 Okla. 88, 23 P. 2d 185; Manhattan General Equipment Co. v. Commissioners, 297 U.S. 129, 56 S. Ct. 397. The fact that the Corporation Commission in prescribing rules and regulations misinterpreted the statute cannot change it, Dunn et al. v. Jones et al., 143 Kan. 218, 53 P. 2d 918. It necessarily follows that, since the policy indorsement amended form "E" adopted by the Corporation Commission excluding the employees from coverage is in conflict with section 169, supra, same is without force and effect for the reason it is beyond the power granted to such commission.

We cannot agree with the defendants' position that in view of the fact that at least two legislative sessions have passed without said act having been amended by the Legislature, the Corporation Commission's operative interpretation of section 169 is determinative. Such operative interpretation may be taken into consideration, but is not binding and cannot have the effect of amending the act. Authority to amend cannot be delegated to an administrative board. Associated Industries of Oklahoma et al. v. Industrial Welfare Commission et al., 185 Okla. 177, 90 P. 2d 899; United States v. Grinaud, 55 L. Ed. 563, 220 U. S. 505; F. W. Woolworth Co. v. United States, 91 F. 2d 973.

In recent years organized society found the necessity of protecting the worker. The attempt to put the employees of the motor carriers under the Workmen's Compensation Law by the 1929 amendment clearly indicates a legislative intent to extend the protection of such employees rather than to limit or exclude them. We held such amendment to be unconstitutional in the case of Brinks Express Co. v. Foster, 154 Okla. 255, 7 P. 2d 142. The 1942 Legislature amended the Workmen's Compensation Law placing the motor carriers thereunder. In case of injury the employees of a motor carrier are now protected by the Workmen's Compensation Law, and in case of death recovery may be had in a common law negligence action and is under the insurance coverage provided by section 169.

We, therefore, conclude that an employee comes within the insurance coverage provided by section 169, and the insurance contract involved herein is amended to conform to the law. The insurance company was therefore a proper party defendant in this case. See Jacobsen v. Howard, supra.

Section 169, supra, requires the filing of a liability insurance policy or bond in an amount approved by the Corporation Commission binding the insurance company to pay for injury to or death of persons resulting from the operation of such motor carrier. The indorsement amendment form "E" adopted by the Corporation Commission attached to the policy states that the insurance company is liable for injury to or death of persons due to any negligence of the motor carrier in the operation or use of any motor vehicle under the certificate of convenience and necessity coming within the jurisdiction of said commission. The provisions of the insurance policy must be in conformity therewith. If in conflict, it is deemed amended to conform to the law.

The decedent was a "truck pusher".

The defendant carrier, his employer, furnished him the automobile to carry on the work to facilitate the movement of the freight or express. The accident certainly resulted from the operation of such motor carrier. It is a motor vehicle within the purview of the act as well as the terms of the policy. This conclusion is in harmony with the case of Duke Anderson Drilling Co. v. Smith, 193 Okla. 107, 141 P. 2d 565. Under the facts pertaining thereto we hold that the car was being operated under the certificate of convenience and necessity and falls within the coverage of the insurance policy filed in connection therewith.

The defendants next complain of the sustaining of objection to certain testimony to the effect that a short time prior to his death the decedent had told the witness that the car was "in excellent shape and was running fine." The objection was not made until after the witness had testified that the decedent told him "that the car was all right." Although the trial court sustained the objection, it did withdraw same from the jury and did not admonish the jury not to consider it. This statement as well as statements from other witnesses on behalf of the defendants to the same effect were before the jury. We find no prejudicial error in the court sustaining the objection thereto.

Defendant complains of instruction No. 12, which is as follows:

"And you are further instructed in this connection that if you find by a preponderance of the evidence in the case and pursuant to the instructions given herein that the defendant, Hazelrigg Trucks, is liable for damages to the plaintiff in any sum, then, and in that event, you are hereby instructed to render judgment against the defendant, S. R. Hazelrigg Trucks, said amount, however, as against the Casuality Reciprocal Exchange cannot exceed the sum of $10,000.00, the amount of said liability under said insurance

policy by said company to the S. R. Hazelrigg Trucks"

The defendant says:

"The error of this instruction is obvious, since, as is established by our argument under Proposition Two, there could be no liability on the part of Casualty Reciprocal Exchange."

"Proposition Two. The policy or bond of defendant, Casualty Reciprocal Exchange, did not cover plaintiff's decedent, nor did it cover the automobile driven by decedent at the time of his accident."

From an examination of the record we find the question of the liability in the bond was presented to the jury by the defendant Casualty Reciprocal Exchange in its opening statement to the jury, to wit:

"First, there are two defendants in this case. One of them is S. R. Hazelrigg, and the other the Casualty Reciprocal Exchange; that the Exchange is made a party to this suit now for the reason that it issued the insurance policy which is known as the Five Thousand Dollars and Ten Thousand Dollars insurance policy on the other defendant. Now, that Five Thousand Dollars is on any individual or person. The Ten Thousand Dollars is for any number of persons. That policy will be introduced in evidence no doubt. Now, that policy, I want you gentlemen to examine it when they introduce it. It shows clearly that it does not cover any employee of the company whatsoever. It says so on its face. I want you to look at that in case it is introduced in evidence and see that, and if you find that it does not cover the employees, of course it is in the province of the jury to determine why they would designate us as a party in this case by counsel."

The record also shows:

"Said Exhibit 'A' and Exhibit 'A-1' so offered, admitted and read in evidence on behalf of the plaintiff at this time to the jury being in the following words and figures, to wit:

"The Exchange's liability under

Coverage 'A' of this Contract for bodily injury to or death of any one person is limited to Five Thousand Dollars ($5,000.00), and subject to the same limit for each person, the Exchange's total liability for bodily injury to, or death of more than one person in any one accident is limited to Ten Thousand Dollars, ($10,000.00).

"On any motor vehicle operated or used for the transportation of freight or express, or both, the insurer shall be liable to each person (excluding the insured's employees while engaged in the course of their employment and loss of or damage to property of the insured and property transported by the assured designated as cargo) suffering damages as the result of any accident due to the negligence of the assured his/its agents, employees or representatives in the use or operation of such motor vehicle to the extent of damages sustained not exceeding five thousand ($5,000.00) Dollars, and subject to the same limit, the total liability of the insurer on account of any accident shall not exceed ten thousand ($10,000.00) Dollars."

The verdict and judgment:

"We, the jury drawn, impaneled and sworn in the above entitled cause, do upon our oaths find for plaintiff, $17,-500.00 against Casualty Reciprocal Exchange Insurance Co. and S. R. Hazelrigg Trucks.

"Now on this 11th day of January, 1943, there comes on to be heard the Motion of the defendant, Casualty Reciprocal Exchange for reduction of verdict. All parties appearing in open court by their attorneys and the Court being fully advised, is of the opinion that the Liability Insurance Bond, which was offered in evidence and referred to in the Motion for Reduction of Verdict being Contract No. 52,959, dated July 1, 1941, under its contractual Provisions, is liable only for the sum of $5,000.00. The Court therefore, in open court, required the plaintiff to grant a remittitur on said verdict, so far as the same affects the Casualty Reciprocal Exchange, in the sum of $12,500.00 or to accept the sum of $5,000.00 liability as against the said Casualty Reciprocal Exchange on said liability bond. The plaintiff in open court, agrees to remittitur, as required by the Court, and files in open court, a written remittitur in compliance therewith.

"It is further adjudged and decreed by the Court, that the remittitur of $12,500.00 granted by the plaintiff, in this cause, in so far as the same affects the Casualty Reciprocal Exchange be accepted; and that judgment be and the same is hereby decreed against the Casualty Reciprocal Exchange in the sum of $5,000.00, and when paid to be credited on the judgment of $17,500.00 as entered against the co-defendant, S. R. Hazelrigg d/b/a S. R. Hazelrigg Trucks. Said judgment to bear interest at the rate of six per cent per annum until paid, for all of which, let execution issue."

We also find in the record:

"By the Court: All right (juryman hands the verdict to the court). Gentlemen of the jury, you state here that you find for the plaintiff in the sum of $17,500.00, it will be necessary for you to write it there against whom you find . . . By the Court: Let me ask you this, you say you find for the plaintiff. Against whom do you find? By the Foreman: Against the insurance company and the truck company. . . . (Whereupon, the verdict is read by the clerk.) By the Court: Is it your intention for this verdict to give judgment against both defendants for $17,500.? By the Foreman: Yes, sir. By the Court: Each of you agree? By the Jury: Yes, sir. . . ."

The defendant Hazelrigg Trucks contends that the verdict of $17,500 would not have been rendered if the jury had known that the contribution to be made by the Casualty Company was only $5,000.

The record reflects that the plaintiff in her petition sought to recover some $60,000 damages for wrongful death. There is no contention that the judgment as a whole is excessive.

The defendant Casualty Company contended in the trial of the cause that there was no liability against it, as employees were expressly excluded by the terms of the bond. The erroneous amount set forth in instruction No. 12 seems to be caused by inadvertence, due, no

doubt, on account of the total liability covered by the bond being $10,000.

The defendant Casualty Company did not call to the attention of the trial court the limit of its liability to $5,000 before the jury was discharged.

This court will not permit a litigant to remain silent and speculate on the outcome of the verdict of the jury and then be heard to complain.

From a thorough examination of the record we conclude that the jury arrived at their verdict not based upon bias or prejudice, but based upon what the plaintiff should recover regardless of the amount each defendant would be required to pay.

Judgment affirmed.

RILEY, BAYLESS, WELCH, and DAVISON, JJ., concur. GIBSON, C.J., HURST, V.C.J., and OSBORN and ARNOLD, JJ., dissent.

---

HURST, V. C. J. (dissenting). By 47 O. S. 1941 § 162, the duty to enforce and administer the Motor Carrier Act (47 O. S. 1941 §§ 161-174) is imposed upon the Corporation Commission, and it is given authority "to prescribe rules and regulations applicable to any and all motor carriers."

47 O. S. 1941 § 169 provides that, before issuing any carrier a certificate of convenience and necessity, the commission shall require the carrier to file with it an "insurance policy or bond covering public liability and property damage" binding the obligor to make compensation for "injuries to, or death of, persons" resulting from the operation of the carrier.

The act does not prescribe the form of the policy, but it expressly requires the commission to fix the amount thereof. The duty of the commission to prescribe the form of the policy consistent with the requirements of section 169, and its duty to construe the ambiguous provisions of the act in administering it, are clearly implied.

Prior to 1938 the commission prescribed Form E as a rider to the policy. Form E did not expressly include or exclude employees of the carrier under the coverage of the policy. In Continental Casualty Co. v. Shankel, 88 Fed. 2d 819, decided March 8, 1937, the Circuit Court of Appeals for the Tenth Circuit held that Form E covered employees of the carrier. The commission was evidently of the opinion that this was not a correct interpretation of Form E, for on May 5, 1938, it made an order amending Form E so as to expressly exclude employees from coverage. In July, 1941, Hazelrigg as a Class B carrier filed with the commission a liability insurance policy, signed by the defendant Casualty Reciprocal Exchange as insurer. Amended Form E was attached to the policy as a rider.

The plaintiff joined Casualty Reciprocal Exchange as a party defendant on the theory that the statute requiring the policy is, by operation of law, written into the policy, and that, under the statute, employees are "persons" covered by the statute, and that the commission was without authority to prescribe a form excluding the employees from coverage. The defendants properly raised the question of the misjoinder of the Casualty Reciprocal Exchange as a party defendant, and urge the question here.

The defendants lay stress on the provision that the policy shall cover "public liability", while the plaintiff lays stress on the provision that it is to protect "persons" and urges that the term "persons", which is not defined in the act, includes employees of the carrier.

By prescribing Amended Form E the commission construed section 169 to require only a "public liability" policy, and that the "persons" covered included only members of the public and did not include employees of the carrier. The commission thus sought to reconcile these provisions that in a measure seem to be in conflict, and sought to

give some effect to all the provisions and carry out the intention of the Legislature, as was its duty. Colbert Mill & Feed Co. v. Oklahoma Tax Commission, 188 Okla. 366, 109 P. 2d 504. Two sessions of the Legislature intervened between the time Amended Form E was promulgated and the issuing of the policy sued on, and the Legislature did not amend the statute under consideration. The Legislature is presumed to be familiar with the construction placed upon statutes by executive officers, charged with the duty of enforcing them, and by failing to thereafter legislate on the subject it will be presumed to have acquiesced in such construction. McCain v. State Election Board, 144 Okla. 85, 289 P. 759; United States v. Shreveport Grain & Elevator Co., 287 U.S. 77, 77 L. Ed. 175, 53 S. Ct. 42; 59 C.J. 1030, note 67; 50 Am. Jur. 318; Southerland, Statutory Construction (3d Ed.) § 5109. On the strength of the construction placed upon the statute by the commission in prescribing Amended Form E the policy sued on was made, limiting the coverage to the public and expressly excluding employees.

We are committed to the rule that the administrative construction of a statute by executive officers whose duty it is to administer it, while not conclusive, is entitled to great weight by the courts when they are called upon to judicially construe it, and this is especially so where contracts have been made or rights have been acquired on the strength of such construction. Crosbie v. Partridge, 85 Okla. 186, 205 P. 758; McCain v. State Election Board, above. And this is the general rule. 59 C. J. 1025; 25 R. C. L. 1943; 50 Am. Jur. 309; Sutherland, Statutory Construction (3d Ed.) § 5105. This rule is controlling here, if, as I believe, section 169 is ambiguous and does not *clearly* require that the policy cover employees of the carrier. The policy clearly must cover "public liability", but it is not clear that employees are persons so protected. In fact, in Utilities Ins. Co. v. Potter, 188 Okla. 145, 105 P. 2d 259, we said that the statute was intended to protect the public.

The decision of the Circuit Court of Appeals in Continental Casualty Co. v. Shankel, above, is not contrary to these views. That case involved a construction of a policy with Form E attached. The policy was ambiguous, and the court properly resolved the ambiguity against the insurer under the familiar rule that insurance contracts are to be construed most strongly against the insurer. 29 Am. Jur. 180-187; 32 C. J. 1152-1157. While the court there used some language referring to the meaning of the statute, it was in fact construing the bond, for the court said: "We conclude, therefore, that Shankel was within the insurance coverage of Form E."

Thus, the controlling principle involved in the Shankel Case was different from the one with which we are concerned. There, the construction of the *policy* was involved, while here the construction of the *statute* is involved. There, doubt as to the meaning of the policy was to be resolved against the insurer. Here, doubt as to the meaning of the statute is to be resolved in favor of the construction placed upon it by the Corporation Commission, and on the strength of which the policy was made.

I conclude that the Casualty Reciprocal Exchange is not liable to the plaintiff on the policy, and it was error to refuse to dismiss the cause as to it, and Hazelrigg was prejudicially affected by keeping it in the case as a defendant. See Berry v. Park, 185 Okla. 118, 90 P. 2d 425; 56 A. L. R. 1418, annotation.

By the majority opinion the insurer is required to assume a liability which it not only did not agree to assume, but which it expressly contracted against, and for which it presumably was not paid. Hazelrigg is undoubtedly liable for the damages sustained by the plaintiff for the death of Sutfin if his

death was proximately caused by Hazelrigg's negligence.

For the foregoing reasons, I respectfully dissent.

The Chief Justice and Mr. Justice OSBORN concur in this opinion.