ISMAEL GONZÁLEZ SANTOS, Plaintiff and Appellant, *v.* MIGUEL A. SANTOS and U. S. CASUALTY CO., Defendants and Appellees.

No. 11043.   Argued October 16, 1953.—Decided February 12, 1954.

*J. Córdova Mercado* and *Isaías M. Crespo* for appellant.  *Emilio de Aldrey* for appellees.

Mr. Justice Ortiz delivered the opinion of the Court.

In the former District Court of Puerto Rico, Arecibo Section, appellant Ismael González Sánchez filed an action for damages against Miguel A. Santos and the United States Casualty Co., on October 2, 1951, alleging that while plaintiff was driving for pay, and as chauffeur of the defendant, Miguel A. Santos, a vehicle owned by Santos, an accident occurred, without fault or negligence on the part of the plaintiff, as a result of which he sustained the following injuries:

Fracture of his left femur, on which he was operated; serious lacerations in different parts of the body;  and furthermore he suffered severe pains for a long time and mental anguish during his confinement.

It also appears from the averments of the complaint that the accident is covered by an insurance policy issued by the United States Casualty Co., by virtue of the provisions of § 10 (a) of Act No. 279 of April 5, 1946 (Sess. Laws, p. 598), which establishes the issuance of insurance policies with respect to accidents involving public service vehicles, the one herein being such a vehicle.

The United States Casualty Co., filed a motion for summary judgment to which it attached a copy of the insurance policy covering this case, alleging that it does not cover the injuries that plaintiff alleges were sustained by him.  The policy, in effect, covers all possible injuries that the passengers or third persons are liable to suffer but, as to the drivers or chauffeurs, it merely covers their accidental death,

dismemberment or loss of sight. It does not cover specifically the injuries which plaintiff in this case is alleged to have suffered. Adopting that reasoning, the trial court rendered a summary judgment dismissing the complaint, and the plaintiff appealed.

An insurance policy such as the one in question, issued by virtue of and in compliance with a statutory provision, should conform to the terms of the statute, and its coverage should be consistent with the terms of the basic and specific law, so that a limitation of the coverage of the policy, which is more restrictive than the one provided by the statute, would have no legal effect, since conflicts between statutory and policy provisions as to the limits and scope of the risks and damages caused, will be decided in favor of the statute, at least as to policies required by law. 29 Am. Jur. 197, § 180; 45 C.J.S. 886, 887, § 829; 44 C.J.S. 1214, 1219, § 302; *Logan* v. *Victory Life Ins. Co.*, 259 P. 2d 165; *Olander* v. *Klapprote et al.*, 57 N. W. 2d 734; *American Alliance Ins. Co.* v. *Brady Transfer Co.*, 101 F. 2d 144; *Gillard* v. *Manufacturer's Casualty Ins. Co.*, 104 A. 707. Any exclusion or limitation contained in a policy like the one involved in this case, should be subordinate to the statutory provisions. *Casualty Reciprocal Exchange* v. *Sutfin*, 166 P. 2d 434, 438, 439; *Hindel* v. *State Farm Mut. Auto Ins. Co.*, 97 F. 2d 777, certiorari denied, 305 U. S. 647. The latter should be liberally construed so as to attain the public policy contained in the statute. *Wood* v. *Vona et al.*, 68 N. E. 2d 80; *Leonard* v. *Murdoch et al.*, 68 N. E. 2d 86. In cases like the present one, the statute is considered as forming a part of the contract. *Johnson Transfer Lines* v. *American Nat. Fire Ins. Co.*, 79 S. W. 2d 587. In the policy itself in this case it is provided that the terms of the policy which are in conflict with the statutes (of Puerto Rico), must be considered amended to conform to the statute.

Section 10 (a) of the afore-cited Act No. 279 of April 5, 1946 (Sess. Laws, p. 598) provides the following:

"Every motor vehicle with a capacity of not more than ten (10) passengers, used as a public carrier in the transportation of passengers for pay, including those considered to be the working tool of the owner, shall, in addition to the fees hereinbefore prescribed, pay between July 1 and July 18 of each year, the sum of twenty-nine (29) dollars in special internal-revenue stamps with the words 'Auto Público Asegurado,' printed on them. Said annual sum of twenty-nine (29) dollars, or such part thereof corresponding to the fraction of a year, shall be covered into a special fund in the Treasury of Puerto Rico, at the disposal of the Commissioner, and shall be used by the latter to pay the premium on an insurance policy covering accidents caused by said vehicle to passengers traveling therein to the driver and to third persons, or any other additional risk which the insurance company may be willing to underwrite, and for that purpose the Commissioner shall pay for each insured vehicle said sum of twenty-nine (29) dollars to the State Insurance Fund or to the insurer who, at a public call for bids issued for that purpose by the Supply Commission of the Insular Government, shall offer the best conditions and receive the award, subject to the rules the said Supply Commission may establish for the purpose. In case no bid is received from any insurer, or if the award is not made to any bidder because the terms offered are considered unacceptable, the sum paid by the owners of public automobiles for such insurance policy shall be reserved in the insular treasury in a special fund until such time as an insurer may be found who is willing to provide the desired policy, or shall be placed at the disposal of the State Insurance Fund; *Provided,* That the Supply Commission is empowered to award, separately, the insurance on the automobiles of the public service and the insurance on automobiles considered to be the working tool of their owners."

According to the language of this Section, the insurance policy must cover all damages caused to the driver, as well as to the passengers and to third persons, which are inherent in or incidental to the operation and use of the vehicle as a public carrier. On reconsideration, *Arvelo* v. *Rodríguez*, 69 P.R.R. 936, 940. As alleged in the complaint, plaintiff was

the driver of a vehicle operated and used as a public carrier, and the damages and the accident that he alleges to have sustained corresponded to risks which were inherent in or incidental to such operation or use. In trying to limit or restrict in the policy, in the form we have noted, the coverage provided by § 10 (a), such limitation lacks legal force. The injuries allegedly sustained by the plaintiff fall within the coverage provided by the statute, and it is sufficient to imply the sufficiency of the complaint, notwithstanding the provisions set forth in the policy, which must give way before the law. On the other hand, the afore-cited Section establishes no difference between the damages caused to a chauffeur and those caused to passengers and third persons, as regards the coverage with respect to those damages, but the policy purports to establish such difference, since insofar as passengers and third persons are concerned, the coverage is general as to all kinds of incidental damages, but a limitation is established with respect to certain kinds of injuries sustained by chauffeurs. This difference is not authorized by § 10 (a) and lacks, therefore, validity, particularly in the light of the legislative intent of Act No. 279 to protect chauffeurs.

The decision of *Arvelo* v. *Rodríguez, supra*, should not exercise a direct influence on this case, since the *Arvelo* case has no bearing, because of its facts and circumstances, on the case at bar. The *Arvelo* case dealt with an accident involving a public service vehicle, which, at the time of the accident, was not engaged in the transportation of passengers for pay, but was carrying guests for recreational purposes when the accident occurred. It was held that there was no risk incidental to the operation or use of the vehicle as a public carrier. That is not the question in this case. Nor is the case of *Hernández* v. *Rosario*, 66 P.R.R. 281, directly applicable to the case at bar. That case referred to the provisions of Act No. 33 of 1941, (Sess. Laws, p. 548)

and it was not within the purview of § 10 (a) of Act No. 279 of 1946. In that case it was stated that since Act No. 33 contemplated that only a public automobile operated by its owner will be entitled to the benefits thereof, a policy issued pursuant thereof may be properly restricted to accidents occurring while the owner is operating the automobile as his means of work, while in the case of *Hernández v. Rosario*, when the accident occurred the automobile was being driven by a person other than the owner.

It is alleged in this case that the governmental agency in charge of the approval and issuance of the insurance policies involved approved the clause in question. Naturally, as an administrative interpretation, such action has a persuasive value (*Arvelo v. Rodríguez, supra*, p. 914), but it is not controlling (*Casualty Reciprocal Exchange v. Sutfin, supra*,), nor does it bind the courts definitively, as to whether or not there is a conflict between the policy and the statute. If there is a conflict between the policy and the statute, the latter must prevail, even if the policy has been approved by a governmental agency. *American Nat. Ins. Co. v. Ingle*, 129 S. W. 2d 426; 135 A.L.R. 1325.

The defendant Company alleges that there is a difference between its liability with respect to passengers and third persons and that with respect to chauffeurs. But the statute establishes no difference, or classification of any kind. The same type of risks and liability is applicable to chauffeurs as well as to passengers and third persons.

Section 10 (a) determines that the insurance company may underwrite any additional risks besides those provided by law. That clearly indicates that other risks, besides those inherent in or incidental to the operation and use of the vehicle as a public carrier, may be covered by the policy if the insurance company underwrites them. *Arvelo v. Rodríguez, supra*, at page 940. But it does not indicate that the company may limit the risks for the purpose of

excluding those provided by law, that is, for the purpose of excluding those which are inherent or incidental, as is the case here.

By providing in § 10 (a) that the Supplies Commission of our government shall award the bid to the insurer who offers the best conditions, the Legislature granted no authority to dispense with or limit the minimum conditions required by law.

The judgment appealed from will be reversed and the case remanded to the Superior Court, Arecibo Part, for further proceedings not inconsistent with this opinion.